# AUSTIN TERM, 1903.

## H. BISMARK v. THE STATE.

### No. 2462. Decided April 15, 1903.

**1.—Disqualification of Judge—Remarks by.**

Where the judge, when the case was called for trial, thought, from the suggestion of the district attorney, that the case would be dismissed, re-marked that he thought he was disqualified to enter any order, as he knew the defendant to be a liar and perjurer; which statement was made in a private conversation between the judge and attorneys, and not in the presence of the jury, and which remarks, the judge stated, were jocular and with no knowledge on his part of the facts in the case on trial; Held, while the remarks were improper, they did not disqualify the judge from trying the case because of his prejudice against defendant. Following Gaines v. State, 38 Texas Crim. Rep., 202.

**2.—Continuance—Diligence.**

See opinion for facts stated, showing diligence sufficient to secure absent witnesses on application for continuance.

**3.—Same—Receiving Stolen Property.**

On a trial for receiving stolen property, a continuance should have been granted for a witness who had in his possession a letter written by the State's witness who delivered the stolen property, to defendant, and in which letter demand for the payment of money was made by said witness of de-fendant and other parties, with the threat that he, witness, would give the parties away if they refused to comply with his demand. The evidence was material as affecting the credibility of said State's witness.

**4.—Same.**

On a trial for receiving stolen property, where a State's witness testified that he delivered the goods according to agreement, at 8 o'clock in the morn-ing, at a town fifteen miles from the place of the theft, a continuance should have been granted for an absent witness who would have testified, that he saw the State's witness at said town at 11 o'clock on said day trying to sell the goods to other parties—the testimony being material as tending to show that defendant bought the goods.

**5.—Receiving Stolen Property—Evidence of Subsequent Thefts.**

On a trial for receiving stolen property, it is incompetent to prove sub-sequent thefts, etc., committed several days later from another party—they not being res gestae, but different transactions.

**6.—Same.**

On a trial for receiving stolen goods, defendant can not be convicted upon evidence which showed that the party from whom he received the goods got them from the owner's brother, who was intrusted with the management and control of the store and goods by his brother, and who committed a breach of trust in disposing of his brother's goods.

**7.—Same—Misdemeanor Offense—Charge.**

On a trial for receiving stolen goods, where the evidence is uncertain as

to the value of the same as constituting a felony, the court should submit a charge as to a misdemeanor offense.

**8.—Same—Evidence Insufficient to Corroborate Accomplice.**

　　See the opinion for evidence held insufficient to corroborate the testimony of the accomplice on a trial for receiving stolen property, the conviction being based upon the accomplice testimony.

　　Appeal from the District Court of Travis. Tried below before Hon. N. A. Rector.

　　Appeal from a conviction of receiving stolen property; penalty, two years imprisonment in the penitentiary.

　　The indictment charges the receiving by defendant, knowing it to have been stolen, the following, the property of Carlo Franzetti, viz: First—Ten caddies Schnapps chewing tobacco, of 10 pounds each, of the value of 38 cents per pound. Second—Forty pounds Bull Durham smoking tobacco of the value of 50 cents per pound. Third—Two cases Levi Garrett snuff, each case containing 48 bottles of 6 ounces each, and each bottle worth 25 cents.

　　The evidence as to what property was stolen from Carlo Franzetti is the following, viz: Edwards swore Angelo Franzetti, brother and clerk of Carlo Franzetti, delivered to him (Edwards) property as follows: First—Ten caddies of Schnapps tobacco, as alleged in indictment, supra. Second—Two boxes of Bull Durham smoking tobacco, each box holding 5-pounds packages. Third—Two cases Levi Garrett snuff, 48 bottles in each case. These goods, he says, were delivered to defendant at Manor, Texas, July 1, 1902.

　　Carlo Franzetti swore: "I lost from my store at this time (meaning time of Edward's theft): First—Two boxes Bull Durham tobacco. Second—One box Star tobacco. Third—One box Natural Leaf. I think I lost some Schnapps tobacco and some Levi Garrett snuff, but can not swear I did, nor how much. * * * This is the only time I lost any goods from my store, and this was about the last of June or first of July."

　　Angelo Franzetti: "I am brother to Carlo Franzetti. I work as clerk in his store. He has a safe and I know the combination; also a cash register, and I know how to use it. I make sales of goods for my brother on cash or credit. * * * I have authority to sign checks in his name, and draw money from the bank when he is away. On last of June or first of July, 1902, my brother's store was robbed. He lost two boxes Bull Durham tobacco, containing 25 pounds each; we also found one box of natural leaf chewing tobacco and one box of Star chewing tobacco next morning in the trash barrel in front of the store. In the store we had Schnapps tobacco and Eli Garrett snuff, together with other goods usually found in a grocery store. * * * I don't know if anything else was taken. The store was never robbed but once that I know of. I never received $20 from Charles Edwards in payment for goods delivered to him at night from my brother's store. I never delivered any goods to Charles Edwards on or about July 1st, or

at any other time. I never gave him a key to the store; I never helped him set the goods out of the store on or about July 1st, or at any other time, and I never had anything to do with Charles Edwards with selling or taking goods from the store of my brother at any time or in any manner, and never told him he could come in the store. I never agreed on any code of signals by which he was to know whether the lights were on or off, or whether to come in or not. I deny emphatically any connection or agreement whatever with Charles Edwards. I had access to my brother's cash both in the bank and in the store all the time, and would not have stolen goods with a negro, had I wanted to steal. I certainly would not have given by brother's goods to a negro. I did not need a negro to help me to steal if I had wanted to steal. * * * There was no necessity to have a key made if I was in with him; I could have let him in myself."

The acquisition was, according to Edwards, through a preconcerted arrangement and conspiracy between Angelo Franzetti and himself, the clerk of the owner of the goods, and who was then in possession of them, sleeping in the store, with power to sell for cash or on credit, had combination to the safe, worked the cash register and had access to the cash of his employer all the time, both in the bank and safe, authority to draw checks on bank for money, etc.

. *Hart & Kemp, Moore & Moore,* and *Walton & Walton,* for appellant.—We submit that the presiding judge at the trial, if not legally disqualified, for the sake of propriety should not have sat in this case. The testimony, in the opinion of the district attorney, was not sufficient to support a conviction, and he had partly drafted the proper written motion to dismiss, when the remark of the court, "that he thought he was disqualified to enter any order whatever in said cause, from the fact that he knew the defendant to be a liar and perjurer," arrested the attorney's partly executed purpose, and defendant was put on trial. Such acrid and virulent sentiment and opinion in regard to and toward a defendant on entering his trial for his liberty, on the part of the presiding judge, are inconsistent and incompatible with a frame of mind to mete out fairness in the administration of the law, and a conviction before that judge has but an insecure foundation. Whether those sentiments, opinion and feeling have been visibly manifested in the result of the trial or not, liberty is in danger when such sentiments fill the breast of a trial judge, and his work should be scrutinized with double vigilance and closeness.

The conviction must rest on the testimony of the thief himself, and on his alone, or else it has no foundation whatever to uphold it. If he testifies to a crime committed in the acquisition of the goods, it was the crime of embezzlement and not theft.

Conviction for embezzling can not be had under an indictment for theft. They are independent and separate crimes. The one does not

include the other. Nor can one be convicted on an indictment for receiving stolen property, when the property was not stolen but embezzled. White's Penal Code, arts. 878, 942. Subdivision 6 of article 752 is unconstitutional. Huntsman v. State, 12 Texas Crim. App., 619-646; Kerry v. State, 17 Texas Crim. App., 185; Johnson v. State, 58 S. W. Rep., 68; Cody's case, 31 Texas Crim. Rep., 185; Long's case, 39 Texas Crim. Rep., 464, and other cases.

The admission of evidence as to burglarizing the store of George Criser was error. The testimony was that of the burglar himself in regard to the Criser robbery occurring some eighteen or twenty days subsequent to the act out of which this case grew. (1) In this case said testimony was irrelevant and immaterial, in that it did not and could not elucidate the crime, nor fix intent, furnish motive or establish scienter, for or in the commission of the crime charged on defendant, and on which charge he was being tried. (2) It was subsequent in date. (3) It was the testimony of a confessed accomplice, and was wholly uncorroborated. Kelly v. State, 18 Texas Crim. App., 267; Welhousen v. State, 30 Texas Crim. App., 626; Long v. State, 39 Texas Crim. Rep., 537; Smith v. State, 68 S. W. Rep., 985.

The State's main witness, Charles Edwards, without whom the State had no case whatever, was not corroborated (art. 781, White's Penal Code) by any evidence tending to connect defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense. White's Crim. Proc., sec. 994, where is collated a great number of cases that announce and affirm the rule as stated. Henningburg v. State, 6 Texas Ct. Rep., 780.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of receiving stolen property, knowing the same to have been so acquired, and his punishment assessed at two years confinement in the penitentiary; hence this appeal.

Appellant made a motion to require the judge to recuse himself on the ground that he was prejudiced against defendant. The motion shows that when the case was called the district attorney suggested that he would file a motion to dismiss the case on the ground that the evidence was not sufficient to authorize the conviction. At this juncture the motion shows the judge to have stated that he thought he was disqualified to enter any order in said case because he knew defendant to be a liar and perjurer. The judge in his qualification to the bill says that he made some such remark when he thought the case would be dismissed; that he made it in view of his knowledge of the defendant and his testimony in the former trial in a civil suit in which he had acted as counsel; that said statement was not made in the presence of the jury, but in private conversation between the judge, district

attorney, appellant's counsel and the district clerk; that the remarks were of a jocular character, and without any knowledge of the facts in the case at bar.   After this, the district attorney stated he had discovered that he could corroborate the accomplice and would not dismiss the case.   While the remarks in question, under the circumstances, were not proper and should not have been made, yet, as was held in Gaines v. State, 38 Texas Crim. Rep., 202, said remarks did not disqualify the judge from trying said cause.   Such remarks emanating from a judge will cause a closer and more rigid scrutiny of the errors complained of.

Appellant made a motion to continue the case, based on the absence of three witnesses, to wit:   George S. Walton, John Kennerly and W. C. Puckett; the first two alleged to be residents of Travis County, and the latter formerly a resident of said county, but that he had changed his residence, and his present abode was unknown.   It appears that defendant caused a subpoena to issue for George S. Walton on November 3, 1902, which was served.   Subsequently, on November 29th, appellant caused another subpoena to issue to said Walton, commanding him to bring with him a certain note which had been written by Charles Edwards, State's witness, to certain parties named in said application. On disobedience of said subpoena it appears attachment was issued on the 6th day of December to Jefferson County for said witness, returnable on December 9th, the day the case was set for trial.   At the time of trial said process had not been returned, and witness was not in attendance on the court at the trial.   On October 29th a subpoena was issued by the State for said witness Puckett, to Travis County, which was served on November 1st.   That another subpoena was issued by the State for said witness November 15th, but same was not served, it being stated that witness was in Oklahoma.   On December 6th the State issued process for Kennerly, which was served, and said witness was not in attendance on the court.   Appellant relied on the State's process for the two last named witnesses.   Appellant says he expected to prove by witness Walton the possession of a certain letter or note which was written and sent out of jail by Charles Edwards to one H. Joseph, an Assyrian.   Said letter demanded the payment of $250 by certain Assyrians, including appellant.   In case of refusal, Edwards proposed to give them away, etc.   It occurs to us, under the circumstances of this case, that this was material testimony as going to the credit of the witness Edwards; and inasmuch as the application shows that demands were made of others for payment of money, it was no answer to the proposition that the contents of said letter was permitted to be proven by other witnesses.   The witness was not certain that Bismarck's name was in the letter.   It also occurs to us that the testimony of Puckett was material.   On the part of the State, the proof showed that the sale of the goods was made to appellant by Edwards in the town of Manor, some fifteen miles from Austin, about 8 o'clock

in the morning; and by Puckett it was proposed to be shown that he saw Edwards at Manor endeavoring to sell goods to other parties, about 11 o'clock on said day. This testimony would directly controvert the testimony of the State's main witness; and would, furthermore, tend to show that appellant bought the goods in due course of trade, inasmuch as Edwards was endeavoring to sell the goods to other parties, whereas Edwards' testimony shows that he took the goods to appellant early in the morning and disposed of them to him as prearranged between them. It does not occur to us that the testimony of the witness Kennerly is material; but the testimony of the other two witnesses was material, and the diligence used appears to have been sufficient.

The State was permitted to prove, over appellant's objections, two other cases of burglary and theft from another party, to wit, George Criser, who had a store in the city of Austin, both subsequent to the alleged burglary and theft in this case. The indictment alleges, and the proof shows, that the offense here charged, if committed, occurred on the 1st of July. The other two offenses admitted in evidence occurred on the 10th and 18th days of July. In every case of receiving stolen property it is incumbent on the State to establish two propositions: (1) That the property was stolen, and (2) that the party charged with receiving the same, did so with guilty intent; and all evidence tending to prove either of these propositions is admissible. As to these subsequent offenses, it does not occur to us that it was any part of the res gestae of the offense charged against appellant, or any part of a system showing that Edwards, because he committed said subsequent thefts, committed the theft in question. The bill shows that appellant was present at the commission of the two subsequent thefts, and evidently participated therein; that is, it shows he remained in the alley at the time said theft was being committed, and in one of said thefts received the goods in a wagon, and in the other was there for the purpose of receiving the goods, but Edwards was detected and arrested before the completion of the theft. If by this it was intended to introduce evidence for the purpose of showing guilty intent of appellant in receiving the goods charged to have been burglarized in this case, it occurs to us it is too remote. Mr. Wharton in his work on Criminal Evidence, section 44, says: "Guilty knowledge being the gist of the offense of receiving stolen goods, receptions about the same time of other goods of the same character, stolen from the same person or persons connected with him, may be put in evidence on the trial of an alleged receiver; but the other occasions on which the stolen property was received must not be so far removed in point of time as to form entirely different transactions." In this case the goods were not taken from the same person charged in the indictment, or persons connected with him; and, moreover, they were no part of the same transaction, but subsequent thereto, and were so removed in point of time as to

form different transactions. Accordingly the testimony was not admissible.

Appellant insists that, if the evidence shows any offense was committed by Edwards, it was not theft on his part, but embezzlement, inasmuch as, according to his testimony, Angelo Franzetti, who participated with him in the offense, had full custody of the store, he having the key thereto, and the goods being at the time in his possession. On this subject the proof shows, without any controversy, that Angelo Franzetti was the brother of Carlo Franzetti, who was the owner of the store, and that Angelo had as full management and control of the store, and as full authority to dispose of the goods, as Carlo, the owner. It has been held in a number of cases (and this is the received doctrine) that temporary custody, as of a servant, is not a bailment, and that the taking by such servant is theft, and not embezzlement. See Livingston v. State, 38 Texas Crim. Rep., 535; Roeder v. State (Texas Crim. App.), 45 S. W. Rep., 570. However, it occurs to us that the case at bar, in its facts, goes much farther, as to the management and control of the said store and goods, than either of the cases cited. Carlo Franzetti, the owner, testified that his brother Angelo worked for him as a clerk, and had full authority to sell goods out of said store, and to receive the money therefor, and slept in the rear room of the store; that he had authority to draw checks, and knew the combination of the safe. However, he says that if Angelo went in with Edwards to take the goods at night, sell them, and divide the proceeds, as testified by witness Edwards, he acted without his authority and consent. Of course, Angelo was not entitled to the possession of said goods as against Carlo, the owner, but he seems to have had as much control of the store as his brother. He was more than a mere servant. He was intrusted with the management and control of the store and goods. And being in possession, his disposition of them, if he disposed of them as testified by the witness Edwards, was a breach of his trust as a bailee of said goods, and not a theft of the same. Consequently appellant could not be convicted in this case of receiving stolen property.

It is also contended that the State failed to prove the receipt by appellant of a sufficient amount of goods charged in the indictment to constitute a felony. The record shows some confusion on this point, and the court should certainly have submitted a charge on misdemeanor, in view of the testimony.

It is further strongly urged that the proof is not sufficient to sustain a conviction because there is no evidence tending to corroborate the accomplice. We would remark, in view of the contradictory testimony of the accomplice, and his impeachment, if there ever was a case in which the strict rule of law with reference to corroboration should be applied, this is such a case; and, in our opinion, the evidence of corroboration is not sufficient. True, appellant, according to the testi-

mony of Meredith, a State's witness, while he was in jail, and after he had been warned, stated that he bought from Edwards, at his store, in Manor, the goods charged in the indictment, and paid him $40 for the same; that Edwards brought them in a buggy, and told him that a friend of his was about to break in Austin, and he was selling them cheap. However, when he was asked if he believed the statement of Edwards, appellant said "No." Now, he may not have believed the statement of Edwards, but it does not occur to us that this simple reply would be evidence sufficient to show guilty knowledge that the goods were stolen property. He may not have believed the statement of Edwards, and yet this would not imply guilty knowledge on his part that the goods were acquired by theft. And from our examination of the record, this is all the testimony bearing on this question of corroboration.

Appellant raises other questions, but we do not deem it necessary to discuss them. For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*