## T. C. Wallace v. The State.

### No. 2956.   Decided May 31, 1905.

**1.—Murder—Change of Venue—Nearest County Seat—Judge's Reasons.**

Where the defendant in a prosecution for murder filed an application to change the venue, setting up both grounds of the statute, but did not mention any particular county to which he desired the venue to be changed, and the State controverted the application, there was no error in the action of the court in changing the venue over defendant's objections to a county whose county seat was not as near as that of another adjoining county to the county from which the venue was changed; the trial judge stating the reasons for his action in defendant's bill of exceptions.

**2.—Same—Severance—Res Judicata—Change of Venue.**

Where a severance had been refused defendant upon the contest of a codefendant, and the motion for severance was renewed after a change of venue and the cases of each were there pending and both consenting to the severance, it was error to hold that the application for severance was res judicata.

**3.—Same—Evidence—Unconnected Incident Not Admissible.**

Testimony in a murder case to the effect that on the night of the homicide, and after it had occurred, the defendant came to witness' house for a drink of water, that his dogs barked and came smelling around defendant, that he had to scold and kick them off, and that witness did not know why the dogs did this, was inadmissible and had no connection with or relevancy to the case.

**4.—Same—Evidence—Acts And Declarations of Co-Conspirators.**

Acts and declarations of the wife of deceased and one C. made in the State of Washington in 1895 with reference to going to Texas and getting married there, after a divorce was procured from the deceased, and made long before they had even met or known the defendant and before he could possibly have known their intentions, and not looking to the murder of deceased which occurred in 1898 in Texas, were inadmissible and not brought within the rule that acts and declarations of co-conspirators are admissible against each other.

**5.—Same—Conspiracy—Court's Province to Admit Evidence.**

It is the province of the court first to satisfy his legal mind that a sufficient predicate has been laid to admit the acts and declarations of co-conspirators, if there is a conflict in the testimony in regard to the conspiracy, then the court may admit the declarations and instruct the jury not to consider them unless they should first find that the conspiracy is shown independent of such acts or declarations; but it is not the province of the jury to pass upon the admissibility of such declarations and an instruction to that effect is error.

**6.—Same—Accomplice—Corroboration.**

An accomplice cannot corroborate himself by his declarations or statements, and the statement of one accomplice can not corroborate another accomplice.

Appeal from the District Court of Camp.   Tried below before Hon. P. A. Turner.

Appeal from a conviction of murder in the first degree; penalty, a life term in the penitentiary.

The substantial facts of this case appear in the opinion of the court on a former appeal, 46 Texas Crim. Rep., 341.

*J. H. Beavers, S. M. Long* and *Ralston, Ward & Hutchins,* for appellant.—An order passed granting or overruling a severance in a criminal case, and thereafter a change of venue is had and both the defendant's and his codefendants' cases are transferred to another county; said order is not irrevocable, and dose not necessarily follow the case, and the parties right to remain the same as they were originally. Locklin v. State, 8 Texas Ct. Rep., 204; Wilson v. State, 10 Texas Ct. Rep., 709.

For the acts and declarations of one alleged conspirator to be admissible in evidence against another person on trial, alleged to be a co-conspirator, it must be shown by the evidence aliunde that the acts or declarations of the co-conspirator, that a conspiracy did in fact exist at the time of the acts or declaration, or subsequent thereto, to commit the crime charged: and it must appear that the person who did the act or made the statement in the appellant's absence, at the time of making the same wished or desired the commission of the crime for which the accused is on trial; that is, the acts or declarations must be in furtherance of the design to commit the offense for which the accused is on trial or must tend to shed some light on the motive or animus of the person making same. Dungan v. State, 39 Texas Crim. Rep., 115; Cox et al. v. State, 8 Texas Crim. App., 254; Preston v. State, 4 Texas Crim. App., 186; Smith v. State, 21 Texas Crim. App., 107; Loggins v. State, 8 Texas Crim. App., 434; Cortez v. State, 24 Texas Crim. App., 511; Martin v. State, 25 Texas Crim. App., 557; Kreb v. State, 8 Texas Crim. App., 1; Smith v. State, 21 Texas Crim. App., 96; McKenzie v. State, 32 Texas Crim. App., 568; Hudson v. State, 66 S. W. Rep., 668; Woods v. State, 60 S. W. Rep., 244; Blain v. State, 33 Texas Crim. Rep., 236.

A conspiracy cannot be established by the acts and declarations of a conspirator in the absence of appellant, and are not legal evidence in his trial to establish the couspiracy against appellant. Cohea v. State, 11 Texas Crim. App., 153; Sessions v. State, 37 Texas Crim. App., 62; 1 Greenleaf on Evidence, 16e, 184a section, and Wiggins v. Leonard, 9 Iowa, 194; Ford v. State, 112 Ind., 373.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant and Carbough were separately indicted in Franklin County for the murder of J. P. Austin. Without going into a detail of the previous condition of this case, it is sufficient to say that Wallace was tried in Franklin County, after acting on motion for severance in that county, and on appeal the judgment was reversed. Wallace v. State, 46 Texas Crim. Rep., 341; 10 Texas Ct. Rep., 915. The case was subsequently transferred to Camp County on change of venue, where this trial occurred resulting in a life term in the penitentiary for murder in the first degree. Appellant filed an application to change the venue, setting up both grounds of the statute. The affidavits and application did not mention any par-

ticular county.   Appellant contends the court should have changed the venue to Titus County, instead of Camp, as the county seat was perhaps three to six miles nearer than the county seat of Camp County, and relies upon Moore v. State, 10 Texas Ct. Rep., 26.   The cases are not similar nor analogous.   In Moore's case the application set out that the county seat of Delta was the nearest to that of Lamar County, and asked for a change to that county for reasons stated; and the application was not controverted by the State.   We held under those facts, and in the absence of a contest and a showing that the same condition of things existed in Delta as in Lamar County, the court was not authorized to change the venue to Fannin County.   This case is brought practically within the rule laid down in Bohannon's case, 14 Texas Crim. App., 271; we are of opinion that, under the showing in the bill of exceptions, this action of the court was not erroneous.

Before the venue was changed there had been an application made in Franklin County for a severance by appellant.   This was contested by his codefendant Carbough.   The court decided the issue against appellant, and placed him first upon trial.   When the case was called for trial in Camp County, another motion to sever was filed by appellant, asking that his codefendant Carbough be first placed upon trial. There was no contest made over this, and Carbough agreed that he would be tried first.   The court decided this issue against appellant, because the action on the former motion to sever in Franklin County was res adjudicata and fixed the status of the parties and the order in which they should be tried.   This was error.   The cases against each were pending in the same court.   The action had in regard to the order of trial in Franklin County, was not res adjudicata.   The parties had the right to change subsequently this order of trial, if they saw proper to do so.

. The witness Newsome, was permitted to testify that on Sunday night after Austin's death, he was up about 9 o'clock, on account of the "fuss" some mule colts and his dogs were making; and went out in his yard to stop it; that while he was out there a man came up and asked for a drink of water; that he told the man he could get the water, and identified defendant as the man he saw that night.   The district attorney, asked witness, "What did the dogs do?"   Defendant objected to this as immaterial and irrelevant.   Witness answered, "They came up around and got to smelling around him.   I just spoke to the dogs, and he said he was not afraid of hound dogs.   Those were hounds.   And I said, 'Yes,' and the dogs came up smelling around him; and I scolded them off, and finally I kicked one of them.   They were hunting around and smelling around, and I did not know what their notions were for doing it."   We do not believe this testimony was admissible.   So far as we are able to see it has no connection or relevancy to this case.

It is not necessary to comment upon the testimony of the witness

Flemming, as shown in bill number 5. It was withdrawn from the jury. The question will not arise upon another trial.

Mrs. Ella Johnson (wife of deceased, who subsequently married Johnson) was permitted to testify that while she and her husband, J. P. Austin (deceased) lived in the State of Washington, she saw H. J. Carbough; that he stopped once in a while at her home. The district attorney then asked her this question: "Did you and Carbough in Washington State have any agreement about leaving that country?" Over various objections, she was permitted to testify, that "there was an agreement between me and some one in Washington State about coming to Texas. The agreement was between me and H. J. Carbough. We were going to come to Texas, and get married; that is, get a divorce, and get married after we came to Texas. I came on the train. My husband and Carbough had gone out hunting when I left. They were to be gone three or four days, I think; four or five." While they were out hunting she started to Texas, took the train at Seattle, and came to Cooper, Delta County, Texas. All of her people lived at Cooper; father and mother, two brothers and a sister; came straight through from that point in Washington. Carbough furnished the money for her travelling expenses. She further stated, she saw her husband again after she came to Delta County. He reached there the same evening she did. They went to housekeeping at Cooper, and lived together; they stayed in Cooper about a year, and then went to Franklin County. The court then asked the question: "Did your husband know anything about when you left home, or anything of that sort?" Ans. "No sir. Carbough got up a hunt, so that I could get a chance to get away." This testimony was objected to on many grounds; not being binding on defendant; was prejudicial to his rights; that any agreement or conspiracy entered into by them was not admissible; defendant was not a party to this agreement; was not acquainted with the parties at the time and the agreement did not involve the taking of the life of the deceased. These objections are well taken. Any acts or declarations of matters occurring between deceased and Carbough in the State of Washington, especially not looking to the death of deceased, could not be used as evidence against defendant. It is only the acts and declarations of a co-conspirator, in furtherance of the common design, that can be used in evidence against another conspirator. These declarations and matters are not brought within that rule. This all occurred in January, 1895, and the killing took place in August, 1898. It was therefore error to admit the testimony.

Special charges requested by appellant were refused. These were intended to afford the jury a criterion by which to reach a conclusion, as to whether or not a conspiracy had been formed or rather shown by the testimony independent of the acts and declarations of alleged co-conspirators, as well as the relation of the acts and declarations of Mrs. Johnson and Carbough to that conspiracy. The court undertook to cover this phase of the case, but we believe the charge is not suffi-

cient in that it leaves it to the jury to determine whether or not these acts and declarations are "admissible." It is not the province of the jury to pass upon the admissibility of testimony. In cases of this character it is the province of the court first to satisfy his legal mind that a sufficient predicate has been laid to admit the acts and declarations of the co-conspirators. Such acts and declarations are not admissible until a predicate has been laid independent of these acts and declarations. If there is a conflict in the testimony in regard to this predicate or conspiracy, then the court may admit the declarations, and instruct the jury not to consider the same, unless they should first find that the conspiracy is shown independent of such acts and declarations. We are here speaking of acts and declarations of co-conspirators made in the absence of each other. It seems to be well settled that before the acts and declarations of one conspirator can be used against another, the evidence must either directly or circumstantially show the formation of the conspiracy, and unless this has been done, such acts and declarations must be excluded from the consideration of the jury. The jury should be appropriately instructed to the effect that until the conspiracy has been shown, they should disregard all such acts and declarations. It is not their province to pass upon the "admissibility" of such declarations; it is their province to determine whether the conspiracy has been proved in the absence of positive proof; or where the evidence is contradictory on this question, the jury passes on the weight, not the admissibility of evidence. If the jury should find the conspiracy existed, then they may consider the acts and declarations of the co-conspirators. If they should find the conspiracy did not exist, then these acts and declarations should not be considered by them.

The jury also should have been appropriately instructed that an accomplice cannot corroborate himself or herself by his or her declarations or statements, and that the statement of one accomplice can not corroborate another accomplice.

For the reasons indicated, this judgment is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, absent.