## JOHN CAIN v. STATE.

### No. 2027.    Decided January 8, 1913.

### Rehearing Denied February 5, 1913.

#### 1.—Rape—Sufficiency of the Evidence.

Where, upon trial of rape upon a female under the age of consent, the evidence was sufficient to sustain the conviction, although conflicting, there was no error.

#### 2.—Same—Rule Stated—Functions of Jury—Practice on Appeal.

Where the evidence was sufficient to sustain the verdict, this court cannot legally take the place of the jury and determine whether it will believe any witness or witnesses, and from all of the testimony as reduced to writing and appearing in the record find a different verdict and reverse the case; if there is sufficient evidence, the conviction is sustained, as the jury in all cases are the exclusive judges of the facts and the weight to be given to the testimony. Following Kearse v. State, recently decided.

#### 3.—Same—Evidence—Impeachment—Explanation.

Where there had been an effort to impeach the State's witness as to declarations made to him by the defendant that he had the case against him beat, etc., there was no error in permitting the State to recall said witness to explain his testimony.

#### 4.—Same—Charge of Court—Impeaching Testimony—Rule Stated.

Where the impeaching testimony can only be used by the jury to impeach a witness, it is not necessary to charge on the subject at all, and there was, therefore, no error in the court's failure to limit impeaching testimony which could only be used to impeach the witness; especially, where such testimony was favorable to the defendant.

#### 5.—Same—Evidence—Prejudice of Witness—Bias in Favor of Defendant.

Where a witness had given material testimony in favor of defendant and against the State, the State had the right to show his bias and prejudice in favor of the defendant. Following Pope v. State, 65 Texas Crim. Rep., 51, 143 S. W. Rep., 611, and other cases.

#### 6.—Same—Witness—Ill-will.

There was no error in permitting the State to show that a State's witness had no ill-will or bias against the defendant; the defendant attempting to show that he had.

#### 7.—Same—Evidence—Practice in District Court.

Where a witness was allowed to substantially testify to the same thing which was excluded in case of another witness, there was no error.

#### 8.—Same—Charge of Court—Bill of Exceptions.

Where the objection to the refusal of requested charge simply quoted the refused charge without giving any reason as to why it should have been given the same is too general to be considered on appeal; besides, the same point was covered in the court's main charge.

#### 9.—Same—Evidence—Other Acts of Intercourse.

Upon trial of rape upon a female under the age of consent, there was no error in permitting the prosecutrix to testify to other acts of intercourse that defendant had with her, other than the one with which he was charged in the indictment and to which the court had limited the finding of the jury. Following Battles v. State, 63 Texas Crim. Rep., 147, and other cases. Overruling Henard v. State, 82 S. W. Rep., 655; Smith v. State, 73 S. W. Rep., 401; Hackney v. State, 74 S. W. Rep., 554.

**10.—Same—Name of Injured Party—Variance.**

Where the indictment charged defendant with ravishing Velma Coalson, and the evidence showed that at the time of the alleged act this was her name, but that soon thereafter, she married Walter McDonald and she was as frequently called by one name as by the other, there was no variance.

**11.—Same—Charge of Court—Age of Prosecutrix.**

Where, upon trial of rape upon a female under the age of consent, the court charged that the jury must find that the prosecutrix was under the age of fifteen years at the time of the alleged rape, there was no error, although her age was not contested.

**12.—Same—Evidence—Imputing Crime to Another.**

Where, upon trial of rape, the defendant contended that another had committed the crime, there was no error in permitting this other party to testify that he never had had sexual intercourse with prosecutrix.

**13.—Same—Charge of Court—Limiting Testimony.**

Where, upon trial of rape, the evidence showed the place where the act of intercourse occurred, there was no error in the court's charge in limiting the jury to the act of sexual intercourse by defendant with prosecutrix to that place; especially, as this followed a requested charge.

**14.—Same—Misconduct of Jury—Practice on Appeal.**

Where, upon appeal from a conviction of rape, it appeared from the record that the court had carefully heard the ground in the motion for new trial as to the misconduct of the jury, heard testimony thereon and overruled the same, there was no error; besides, appellant's counsel failed to urge this ground in their brief and evidently abandoned same.

Appeal from the District Court of Collin. Tried below before the Hon. J. M. Pearson.

Appeal from a conviction of rape; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*G. R. Smith* and *R. C. Merritt*, for appellant.—On question of admitting testimony as to bias of witness and explaining his testimony: Messer v. State, 63 S. W. Rep., 643; St. Clair v. State, 49 Tex. Crim. Rep., 479; 92 S. W. Rep., 1095; Kemper v. State, 63 Tex. Crim. Rep., 1; 138 S. W. Rep., 1025.

On question of charge of court in not limiting impeaching testimony: Rowan v. State, 57 Tex. Crim. Rep., 625; 124 S. W. Rep., 68 Wilson v. State, 35 S. W. Rep., 390.

On question of other acts of sexual intercourse: Henard v. State, 47 Texas Crim. Rep., 68, and cases cited in opinion.

On question of insufficiency of the evidence: Thompson v. State, 33 Texas Crim. Rep., 472; Hill v. State, 55 Tex. Crim. Rep., 407; 117 S. W. Rep., 134.

*C. E. Lane*, Assistant Attorney-General, for the State.

PRENDERGAST, Judge.—Appellant was convicted of the offense of rape upon a girl under fifteen years of age and given the lowest penalty.

The Honorables L. J. Truett and Sam Neathery, the county attorney and assistant county attorney, respectively, of Collin County, have filed a brief for the State. Therein they vigorously contend that the judgment of conviction should not be set aside by this court, but the lower court and the verdict should be sustained, because there was no material error whatever in the trial and that there was no misconduct of the jury and that the evidence is amply sufficient to sustain the conviction. We have received material aid and assistance by the brief of the said county attorney and his assistant.

Although the statement of facts is somewhat lengthy, we have read all of it and studied it diligently and with care, and have reached the conclusion that not only is the evidence amply sufficient to sustain the verdict, but that the preponderance of the evidence on the material issues is decidedly in favor of the State and against the appellant. The contention of the Assistant Attorney General and of the appellant by his able attorneys, is based largely on the fact that the girl alleged to have been raped by appellant contradicted her testimony on the trial and was contradicted by the testimony of other witnesses and there was some testimony by the appellant tending to show that her general reputation for truth and veracity was not good. On the other hand the State introduced several witnesses who testified that her general reputation for truth and veracity was good. There is more or less testimony in the record impeaching the general reputation of the appellant himself and of some of his witnesses and some of those for the State. The ravished girl also herself testified and others testified to the fact that when this matter first came up she swore before the grand jury and the county attorney, and stated to others that the appellant was not guilty and had never had anything to do with her in the way of having sexual intercourse with her, but she also testified that her said sworn testimony before the grand jury and the county attorney and her statement to others was, at the time, untrue and that she was induced to so swear because of the fact that appellant's brother-in-law, who had also had sexual intercourse with her, who was also charged with rape upon her and whom she married within a very short time after appellant's brother-in-law was so accused and arrested for such crime, and because of the threats of appellant to her, in effect, that if she swore against him he would kill her and he would prove her out a liar and send her to the penitentiary. The record shows the testimony of several witnesses for the State, showing facts and circumstances strongly corroborating her wherein she testified that the appellant had sexual intercourse with her on a certain date and together with her testimony, making out a clear and satisfactory state of facts showing the guilt of the appellant. What we recently said in the case of Kearse v. State, from Fisher County, we quote as particularly applicable in this case:

"There is hardly any contested case that comes to this court but what there are contradictions in the testimony, and frequently a principal witness may contradict himself in material matters. In such cases

when it is contended that the evidence is insufficient to sustain the verdict this court cannot legally take the place of the jury and determine whether or not it will believe any witness or witnesses and from all of the testimony, as put down on paper and sent to this court, it would have found a different verdict from that of the jury, and if so reverse the case on that account. The only question this court can determine is whether there is sufficient evidence, if believed by the jury, to sustain the conviction. This court passes upon that question as a question of law, which is all it can legally do under such circumstances.

"Our law expressly provides that the jury in all cases are the exclusive judges of the facts proved and of the weight to be given to the testimony. This court cannot, therefore, take that question from the jury without usurping authority that was never given or intended to be given it. The jury, in a felony case, is made up of twelve fair, disinterested, impartial, unprejudiced, unbiased and competent jurors, selected from different portions of the county, each one of whom hears all the witnesses, looks them in the face when testifying, observes their manner and method of their examination by the respective attorneys, then hears the argument of the attorneys for each side, one side undertaking to break down the testimony of the witness and calling attention to every contradiction in the testimony of such witness and the contradiction by others of him, the other explaining such matters, and seeking to sustain such witness, then hear and take with them in their retirement the charge of the court; then the twelve men discuss and consider in private between themselves all such matters and after weighing it all and all the arguments against it and in support of it, come to the conclusion that the testimony of a certain witness or witnesses, although contradicted and although there are contradictions in the testimony of such witness, is true and they believe it. The jury is made up of men of different ages, from young to comparatively old men, and they pursue different occupations and businesses. . With all these surroundings they are much more competent to arrive at the truth than are the judges of this court who must look solely to the testimony as written down on paper. It can not portray the manner, the looks and the deportment of the witness, nor the manner of his examination and cross examination by the attorneys. Besides this, the presiding judge hears and sees and observes all that the jury does in the trial of the case and he then sustains the verdict of the jury. Therefore, when the evidence taken in its favorable light sustains the verdict this court can not legally set it aside."

We will not undertake to give a summary of all the evidence. We will briefly give a statement of the effect only of some of it. In 1910 the appellant, his mother-in-law, Mrs. McDonald, and his brother-in-law, Walter McDonald, whose sister appellant married, and Velma Coalson and her family, lived in the same neighborhood in Collin County. Velma Coalson, or Velma McDonald, as was her name after-

girl and I told him I didn't know whether he had or not, and he re-marked that he had not had any better time than he had had. * * * Mr. Daniels was a young fellow that was staying there at Coalson's at work."

J. S. McCoy testified for the State: "Along in the summer of 1910, I had a conversation with John Cain, but I don't know exactly whether we were talking about Velma Coalson or not—we were talk-ing about the family at that time. I couldn't state all the conver-sation but we were talking about the family, and the circumstance that happened, and I said why don't you go and compromise, give so much and get shed of the family, and he would give a hundred dollars to get shed of them, that is the Coalson family, and he would have Mrs. Mac to give a hundred dollars, if Hogue Hawkins would a hundred dollars to put them across the line. By Mrs. Mac I mean Mrs. McDonald. He said Mrs. McDonald. I don't know whether I suggested that I would go and see Hogue and get him to say what he would do about it, but I did go and see Hogue, and he said 'By granny, I don't owe nothing.' John Cain said in that conversation that he had been out a right smart of money but he had got his money's worth."

Appellant testified for himself as follows: "I remember the night that Walter McDonald married her—I think I went down there the night they were married. * * * I do not remember the day that Walter McDonald was first arrested on this charge, and do not re-member how long it was before he married the girl—it was a few days."

B. C. Reynolds testified for the State: "I have known John Cain a long time * * * He told me that he had that transaction with Velma Coalson over there in the field fixed. Afterwards I spoke to him about it, and he told me he didn't mean that place—that he referred to the time there was a picnic down near Copeville."

Appellant testified denying specifically every incriminating fact against him. And as stated above, some of the State's witnesses were impeached by showing that they made different or contradictory statements and the general reputation and veracity of some of them is attacked. The State in the same way attacked the testimony of the appellant and some of his witnesses. The testimony of appellant and his witnesses would have authorized the jury to have acquitted him, but all of this was for the jury and the lower court. They did not believe him and his witnesses but evidently did believe the prose-cutrix and the other State's witnesses.

By one of appellant's bills of exception he complained that the court erred in admitting certain evidence of B. C. Reynolds. The bill shows the matter substantially in this way: Said Reynolds had testified for the State on direct examination that appellant had told him that he, appellant, had the case against him beat wherein he was charged with the rape of the prosecutrix Velma Coalson in defend-

ant's cotton patch and that afterwards when he spoke to him about it, appellant told him that he was mistaken about the case in the cotton patch being fixed, that he meant that he had the case fixed which occurred at the picnic over at Copeville. It had been shown by the evidence that the prosecutrix had accused Hogue Hawkins of being the one that was guilty of rape upon her. Thereupon, appellant asked the witness Reynolds, fixing the time and place, if he did not tell Bob Dillon, one of the State's witnesses, that Hogue Hawkins would give said Dillon or anyone else $20 to testify that he saw appellant going to the prosecutrix. The witness denied such conservation with Dillon. Thereupon, appellant introduced said Dillon, who testified that at said time and place said Reynolds did tell him that said Hawkins said he would give anyone $20 who would testify that he saw appellant going to prosecutrix and that Dillon replied that he would not swear it for $500. Thereupon, the State recalled the witness Reynolds and over appellant's objection that it was hearsay and not embraced in a predicate laid to impeach the witness and involved a conversation different from that inquired about, was not in rebuttal; that the conversation he did have with said Dillon upon the case inquired about was ''What I said to Bob Dillon about this $20 was this—I remarked to Bob Dillon, Bob, if you had been here about fifteen minutes sooner you could have made $20, that John Cain had offered $20 to anybody that would say they had ever seen him and that girl together, Velma Coalson.'' The court did not commit any error in permitting the witness Reynolds to testify as he did. Barber v. State, 62 Tex. Crim. Rep., 453; 69 S. W., 515; Turner v. State, 51 S. W. Rep., 366; Streight v. State, 138 S. W. Rep., 742; Jackson v. State, 33 Texas Crim. Rep., 286; 1 Whart. Crim. Ev. (10 Ed.), p. 998, note 5, and p. 1000, notes 18, 19 and 20, where a large number of cases are collated, holding that such explanation and testimony by a witness who is sought to be impeached is clearly admissible. It would certainly be a harsh rule that would permit either side to ask a witness if he had not made a certain statement to a certain party, when the witness would deny it, and then such impeaching witness would state that he had so testified,—to refuse to permit the witness sought to be impeached to make a statement of what he did then say, although it was different from what the impeaching witness claimed he did say. It is not only just and fair to the witness that he should be permitted to state what he did say, but certainly the truth of the matter could not be arrived at, unless he was permitted to state what he did say to the impeaching witness.

Appellant's next complaint is his second ground of his amended motion for new trial which is: ''Because the court did not charge (a) on impeaching testimony generally, and (b) did not limit the effect of the testimony of B. C. Reynolds, as same is set out in paragraph No. 1 above of this motion, (c) because the court did not charge on impeaching testimony as to Velma Coalson, given before the grand

jury, to the effect that the reason she had sworn that John Cain had intercourse with her was because she thought it would make it lighter on Walter McDonald.'' This assignment, in our opinion, is entirely too general to authorize or require this court to pass thereon. Bird v. State, recently decided, and other cases therein cited; Ryan v. State, 64 Tex. Crim. Rep., 628; 142 S. W. Rep., 878; Berg v. State, 64 Tex. Crim. Rep., 612; 142 S. W. Rep., 884. Even if we could consider the questions attempted to be raised in this assignment they present no error whatever. As to the claim that the court should have, by his charge, limited the effect of the impeaching testimony of B. C. Reynolds, it is the settled law of this State that where impeaching testimony can only be used by the jury to impeach a witness it is not necessary to charge on the subject at all. See Sub-division 3, Sec. 873, Branch's Criminal Law, where he collates several of the decisions of this court to that effect. The impeaching testimony of Dillon, nor that of Reynolds in explanation of what he did say to Dillon, could not, in any way, have been used by the jury as incriminating testimony of the appellant. On the contrary all of it, if it had any effect at all, would have been in his favor and not against him. The fact that the complaining witness Velma Coalson (McDonald) testified at first before the grand jury and elsewhere that appellant had nothing to do with her, and afterwards testified on this trial that he had sexual intercourse with her, in no event required the court to charge on impeaching testimony by her. It was all her own testimony and if it impeached her at all it was in favor of the appellant and in no way against him.

Neither did the court err in permitting the State on cross-examination of Jeffcoats, one of appellant's witnesses, to show his bias and prejudice, if so, in favor of appellant and against the State. He had given material testimony in favor of appellant and against the State and the State had the right to show his bias and prejudice in favor of appellant, by showing that at midnight, without any charge having been made to him against the said Velma Coalson, and without having had any subœna issued for her, that he had an attachment issued for her and brought her from her home at midnight for the purpose of probing her in favor of her said husband from whom she had then separated. Pope v. State, 65 Tex. Crim. Rep., 51; 143 S. W. Rep., 611; Earles v. State, 64 Tex. Crim. Rep., 537; 142 S. W. Rep., 1181, and cases therein cited.

Neither did the court err, for the same reason and under the same authority, in permitting the State to show by M. J. Reynolds that he had no ill-will or bias against appellant, when appellant attempted in examination of him to show that he did, by showing that appellant had been arrested and tried and that said witness had testified in the case wherein appellant had theretofore been charged with illegally selling or giving intoxicating liquors to said witness' minor son.

There is no reversible error shown in appellant's complaint that

the court refused to permit his witness Wilcoxson to testify that after he arrested appellant on July 15, 1910, that appellant did not see the prosecutrix, Velma Coalson (McDonald) *that he knew of*. It might not have been improper for the court to have permitted the witness to so state. It is clearly shown that the witness did substantially testify to the same thing or even a stronger statement of that fact for he testified that after he arrested him that day appellant talked to no woman except the witness' wife, and that he had appellant with him continuously from the time he arrested him till he turned him over to another officer and that during the time he had him he, the witness, did not see said Velma Coalson (McDonald) and that said appellant did not talk to anyone that he knew of.

Appellant claims in his amended motion for a new trial that the court erred in refusing to give his requested charge No. 1, simply and solely quoting the charge itself, without giving any reason or statement of why it should have been given. This is too general to require the court to consider the question. However, even if we could consider it, it presents no error, for the court specifically, in his charge, covered the same point and the same ground that this requested charge covered, which was in effect, limiting the jury to the consideration of the one sole act of intercourse by appellant with the prosecuting witness to the time and place of when she had testified it occurred in the ditch or ravine in appellant's cotton patch, and instructed the jury that if they did not find that the act of intercourse, if any, occurred at that time and place to find the appellant not guilty.

The court did not err in permitting the prosecutrix to testify to other acts of intercourse that appellant had with her other than the one with which he was charged in the indictment and to which the court had limited the finding of the jury. Appellant cites, in support of his contention on this point the cases of Henard v. State, 47 Tex. Crim. Rep., 768, 82 S. W. Rep., 656; Smith v. State, 79 S. W. Rep., 556; Smith v. State, 73 S. W. Rep., 401; Hackney v. State, 74 S. W. Rep., 554, which have been specifically overruled by this court in Battles v. State, 63 Texas Crim. Rep., 161, 140 S. W. Rep., 783. See also Smith v. State, 64 Tex. Crim. Rep., 454, 142 S. W. Rep., 1173; Lott v. State, 66 Tex. Crim. Rep., 152, 146 S. W. Rep., 544; Clardy v. State, 66 Tex. Crim. Rep., 351, 147 S. W. Rep., 568. Where evidence of other acts are held admissible.

The indictment in this case charged appellant with ravishing Velma Coalson on or about June 4, 1910. The evidence and all the papers involved in the whole record show, without contradiction and without contest, that at the time of the alleged act upon her, her name was Velma Coalson, but that soon after the alleged act, she married the brother-in-law of appellant, Walter McDonald, and thereupon her name became, as is customary in this country, Velma McDonald. There isn't a particle of doubt shown by the record in any way as to the identity of the party upon whom the alleged assault

occurred, whether she was called Velma Coalson, or Velma McDonald, and she is as frequently called by one name as by the other by the witnesses throughout the whole trial of the case. Appellant attempts to raise the question by first requesting a charge and following it up by a motion for a new trial and in arrest of judgment, claiming that there is a fatal variance in that the indictment alleges that her name was Velma Coalson, whereas, the proof shows that her real name at the time of the trial and at the time of the indictment was found,— not at the time of the alleged assault,—was Velma McDonald. No possible injury has occurred to appellant by reason of the facts just stated and there is no possible question of the identity of the person upon whom he is charged to have made the assault whether she be called Velma Coalson or Velma McDonald and the court committed no error in refusing a new trial on that ground and appellant's charge on that subject.

Neither did the court commit any error in submitting the case to the jury for a finding to require them to find that the prosecutrix was under the age of fifteen years at the time of the alleged rape upon her, because, as contended by appellant, her age was not contested. The sexual intercourse between appellant and prosecutrix having occurred before she was fifteen years of age, with her consent, appellant would not have been guilty of the offense of rape, unless the proof showed and the jury found that she was under fifteen years of age at the time of the act.

Neither did the court err in permitting the witness Hogue Hawkins to testify that he had never had sexual intercourse with the prosecutrix. One of appellant's contentions on the trial was that he had not had sexual intercourse with her, but his attempt all the time, was to show that she had accused said Hawkins and that Hawkins was the person who had had sexual intercourse with her.

The 6th subdivision of the court's charge in limiting the finding of the jury against appellant alone to the act of sexual intercourse. alleged to have occurred between appellant and said prosecutrix in a ditch in appellant's field, and charging them that they could not consider any other acts between the parties, even if they should believe from the evidence that the evidence, beyond a reasonable doubt showed any other act, was evidently given in response to appellant's special charges to the same effect on the same subject and the charge. as given, was not on the weight of the testimony and is not subject to the criticism made thereof by appellant.

There are several grounds in appellant's motion for new trial attacking the verdict of the jury, because, as stated, as example. in the 13th ground, "the jury discussed matters not in evidence before them and which had been excluded by the court." And 14th, "the jury received other and additional evidence prejudicial to defendant from other sources after they retired." 15th, "the jury discussed the fact as to whether Walter McDonald married prosecutrix with a view of

helping defendant defeat his case and to beat his, McDonald's case," and some other like grounds set up in the motion for new trial in the court below. The appellant, by his able attorneys, has presented a forcible and strong brief of some twenty pages, presenting all of the matters that we have discussed above, but nowhere and in no way do they in their brief claim the case should be reversed because of the claimed illegal action of the jury.

There is a bill in the record which shows that the court below in hearing the motion for new trial had all the jurors who tried the case before him and they were sworn and testified fully. Their evidence embraces ten typewritteen pages of the record. We have carefully gone over it all and we fail to find anything in the testimony of anyone of the .jurors that would have justified the lower court in granting a new trial or this court in reversing this case. The court below heard all this evidence, saw these jurors and heard them when they testified and their manner of testifying and what they showed they considered and did not consider in their retirement when considering the case for making their verdict. He found nothing whatever that would authorize or require him to grant a new trial on that account. Appellant's able attorneys evidently must have abandoned any such ground, else they would have presented and urged it in their brief and attempted to show wherein it required the court to grant a new trial or this court to reverse. We have found nothing. On the contrary, the evidence of these jurors satisfies us that they and neither of them were guilty of any such misconduct whatever as would require or authorize this court to reverse. There being no error the judgment will be affirmed.

*Affirmed.*

[Rehearing denied February 5, 1913.—Reporter.]