## DAVE BRADSHAW v. THE STATE.

### No. 4602.   Decided October 24, 1917.

**1.—Incest—Other Acts of Carnal Intercourse.**

Where, upon trial of incest, the testimony of the alleged female was severely attacked on cross-examination there was no error to admit, as tending to solve the issue as to whether defendant had intercourse with said female at the time she claimed he did, other acts of carnal intercourse with defendant occurring prior to the date alleged in the indictment. Following Cain v. State, 68 Texas Crim. Rep., 507, 153 S..W. Rep., 147, and other cases.

**2.—Same—Accomplice—Corroboration—Offspring.**

Upon trial of incest, the alleged female is an accomplice and corroboration of her testimony is essential, and where the testimony as to flight, confessions, etc., was insufficient to corroborate the testimony of the accomplice, the conviction can not be sustained. Prendergast, Judge, dissenting.

Appeal from the District Court of Collin.   Tried below before the Hon. C. T. Freeman.

Appeal from a conviction of incest; penalty, five years imprisonment in the penitentiary.

The opinion states the case. .

*G. R. Smith* and *Owen Smith,* for appellant.—On question of other acts of intercourse: Skidmore v. State, 123 S. W. Rep., 1130, and cases cited in opinion.

On question of corroborating accomplice: Capshaw v. State, 73 Texas Crim. Rep., 609, 166 S. W. Rep., 738.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, JUDGE.—The conviction is for incest with a punishment assessed at five years confinement in the penitentiary.

It is charged that appellant had carnal knowledge of his stepdaughter, Ethel McComb, about November 1, 1914. Ethel McComb was about three years of age at the time her mother and appellant were married. Appellant and his wife lived together continuously up to the time of the trial of this case and thereafter so far as the record shows. There were several children born, among them twin daughters,

who were, at the time of the alleged offense, about fourteen years of age.   Ethel McComb was a member of the family, and continued such until after appellant was indicted in April, 1916, after which time she went to Oklahoma and lived with the family of E. R. Conway, whose wife was her aunt.   A child was born to her on July 12, 1915.   Ethel McComb, the prosecuting witness, testified that the act of intercourse with appellant took place during October, 1914, about 3 o'clock in the afternoon while she, appellant and his twin daughters, above mentioned, were picking cotton in a twenty-five-acre field; that the cotton was about two or two and a quarter feet high, the rows about three feet apart; that she and appellant were picking three rows together, and appellant's daughters each picking one row, and that at the time of the occurrence the daughters were about one hundred and fifty feet distant.   The circumstances show that the act of intercourse, if it occurred, was with her consent, and that she was about nineteen years of age.

Upon the trial the absence of appellant's daughters was stressed by appellant in the conduct of the cross-examination.   He drew out that she disliked him; that he mistreated her in refusing to permit her to keep company with young men, particularly one whom she named; also in whipping her more than the others.   He introduced testimony to the effect that Ethel McComb named another as the father of the child. In rebuttal she testified, at the instance of the State, to other acts of intercourse with appellant occurring prior to October, 1914.   This evidence was objected to, and its admission made the basis of complaint. The conflicting views of this court and its members, as to the legality of such evidence, are shown by the opinions in Clifton v. State, 46 Texas Crim. Rep., 18; Gillespie v. State, 49 Texas Crim. Rep., 531; Skidmore v. State, 57 Texas Crim. Rep., 497; Pridemore v. State, 59 Texas Crim. Rep., 564, rejecting such evidence; and Burnett v. State, 32 Texas Crim. Rep., 86; Williams v. State, 72 Texas Crim. Rep., 618; Smith v. State, 64 Texas Crim. Rep., 454; Cain v. State, 68 Texas Rep., 507, 153 S. W. Rep., 147, holding it proper.   The conflict is emphasized by dissenting opinions in several of the cases mentioned. The writer is of the opinion that such evidence is not to be admitted or rejected in every case, but that its receipt or rejection is to be governed by other facts and evidence, and that in this case it was not error to admit it as tending to solve the issue as to whether appellant had had intercourse with the witness, Ethel McComb, at the time she claimed he did, the truth of her evidence being a controverted fact as developed both by cross-examination by appellant and evidence introduced by him. Ethel McComb, having consented to the intercourse, was an accomplice. Pate v. State, 93 S. W. Rep., 556; Burford v. State, 68 Texas Crim. Rep., 295, 151 S. W. Rep., 538, and other cases cited in Branch's Ann. Stats., p. 588.   Corroboration of her evidence was essential.   Branch's Ann. Stats., p. 589, sec. 1031; Barrett v. State, 55 Texas Crim. Rep., 182; Watkins v. State, 58 Texas Crim. Rep., 110, and other cases listed in Branch's Ann. Stats., supra.

Appellant insists that the evidence fails to corroborate. The State apparently relies upon evidence of three facts to rebut this contention:

First. Flight or evasion of arrest. Ethel McComb resided in appellant's home with his family for some months after the birth of her child. In March, 1916, she went from his home at Anna some distance to the county seat and appeared before the grand jury. Appellant's father took her to town, appellant riding part of the way with him, and when she returned about noon appellant was not at home. On the day she went to town to appear before the grand jury a deputy sheriff went to appellant's home to arrest him and did not find him. Witness says: "He was gone from home and from the neighborhood as far as I could find out. I searched the whole country and did not find him, and did not see him for several days afterward when he was in the sheriff's office." No indictment had then been found. There is no evidence that appellant knew of the issuance of the warrant for him; no evidence save that of the accomplice, Ethel McComb, that he knew that she was going before the grand jury; none at all as to her mission there. The extent of the search, the inquiry made, the length of time consumed by the officer, is not disclosed. Appellant is not shown to have been absent evading arrest, or absent at all, except that the officer was unable to find him. If the proof of his absence would bear any weight, it would be because of his knowledge that Ethel McComb was going before the grand jury. This fact proved by her would not be corroboration of her testimony. She could not corroborate herself by her own evidence. Skidmore v. State, 57 Texas Crim. Rep., 497; Blakely v. State, 24 Texas Crim. App., 616; Harper v. State, 11 Texas Crim. App., 1; Jernigan v. State, 10 Texas Crim. App., 546; Thompson v. State, 73 S. W. Rep., 699; Wallace v. State, 87 S. W. Rep., 1041, and Reese v.

Second. Admissions by appellant. After Ethel McComb went to live with her aunt, Mrs. Conway, during April, 1916, after the indictment was filed, appellant went to the Conway home and had a conversation with Mr. Conway, appellant stating that he wanted to see Ethel and talk with her, and had a letter for her which her mother sent her by him. Conway says he objected to appellant seeing her, and "appellant said he would admit that he had treated Ethel wrong; that she was a good girl and would pay her way anywhere she went, . . . and he wanted us to take care of her, and I told him I was not able." There was evidence that Ethel was aggrieved at appellant, believing that he wronged her by whipping her; working her in the field, and by refusing to permit her to go with other boys, particularly Howard Chumley, and she claimed that he had had intercourse with her with her consent. In appellant's statement to Conway there is no specific admission of the truth of any of these statements of Ethel in which she claimed he had wronged her. There is in Conway's testimony no accusation of wrong done her by appellant. While the law does not define the measure of proof of corroboration, it does require that there should be some fact

or circumstance proved independent of her testimony which would connect the accused with the crime (Capshaw v. State, 166 S. W. Rep., 738; Wharton on Crim. Ev., vol. 1, 10 ed., p. 930) and in our judgment the circumstances relied upon neither alone nor in connection with others proved meet the legal requirement of corroboration..

Third. Appellant's resemblance of the offspring. Appellant's hair was black; Ethel McComb had dark hair; her baby had light hair, nearly white. On the question of parentage evidence of resemblance has been used. Wharton on Crim. Ev., p. 788, note. Our attention has not been directed, however, to any instance in which circumstances so weak as those detailed have been held sufficient to show relationship, or to corroborate a witness who claimed it to exist. In our opinion there is not sufficient evidence of corroboration to justify the conviction of appellant. Ceasar v. State, 29 S. W. Rep., 785; Bismark v. State, 45 Texas Crim. Rep., 54.

The judgment of the court below is, therefore, reversed and the cause remanded.

*Reversed and Remanded.*

PRENDERGAST, JUDGE (dissenting).—I have studied the evidence herein carefully. The other evidence corroborated Ethel McComb's evidence fully and completely in compliance with the statute and decisions heretofore rendered, in four distinct particulars:

First. It was shown a baby was born to her just the time of gestation from the time she swore appellant had intercourse with her.

Second. He is the only man who is shown to have had the opportunity to have had intercourse with her to have been the father of her baby. Appellant attempted to show that a young boy, Howard Chumley, who lived a few miles distant from him, had the opportunity and was the father of said baby. Chumley testified and showed he not only never had intercourse with Ethel, but never had an opportunity, and Ethel also so swore.

Third. As soon as appellant learned Ethel was going to prosecute him, he fled the country and was gone many months before he was found and arrested.

Fourth. After the prosecution had been pending for some time, and Ethel had left him and gone to live with Mr. Conway, her uncle, who lived in Oklahoma, appellant went there to see her. Her uncle swore he declined to let him see her, and said: "He (appellant) says that he would admit that *he had treated Ethel wrong,* and that she was a good girl . . ." This was clear admission of the truth of the charge against him.

There are other circumstances in the testimony tending also to corroborate Ethel. I think there is no doubt whatever of appellant's guilt, and that Ethel was fully corroborated. This case should have been affirmed.