## I. A. Bailey v. State.

No. 2007. Decided March 5, 1913.

**1.—Theft of Horse—Accomplice—Sufficiency of the Evidence—Charge of Court.**

Where, upon trial of theft of a horse as an accomplice, the court properly charged on accomplice testimony and the evidence was sufficient to sustain the conviction, there was no error.

**2.—Same—Charge of Court—Accomplice Testimony.**

Where, upon trial of an accomplice to the theft of a horse, the evidence did not raise the issue of accomplice with reference to the purchaser of said horse, there was no error in the court's failure to charge thereon.

**3.—Same—Other Offenses—Limiting Testimony—Intent—System.**

Where, upon trial of horse theft as an accomplice, the State was permitted to introduce testimony with reference to another theft of a horse prior to the instant case, without objection, and the testimony with reference thereto clearly showed the motive, system, and intent of defendant in committing the theft for which he was on trial, there was no error in the court's failure to specifically limit said testimony to this purpose, no charge being requested by defendant, and the other theft being clearly proven.

**4.—Same—Rule Stated—Charge of Court—Limiting Testimony.**

It is only when proof of another offense is such that the jury might use that testimony improperly to convict for that collateral offense instead of the offense charged and on trial, or make some other unwarranted use of that testimony to the prejudice of the defendant that it is necessary to limit the purpose for which such evidence is admitted. Following Thornley v. State, 36 Texas Crim. Rep., 118, and other cases. Distinguishing Saldiver v. State, 55 Texas Crim. Rep., 177; Reno v. State, 25 Texas Crim. App., 102.

**5.—Same—Case Stated—Other Offenses—Charge of Court.**

Where defendant was on trial and convicted alone for the offense charged in the indictment, and could not have been convicted for any other offense, and the evidence concerning the other offense was admitted alone for the purpose of showing motive, system and intent for the theft upon which he was on trial as an accomplice, there was no error in the court's failure to limit the testimony to the purpose for which it was introduced.

**6.—Same—Accomplice in Collateral Offense—Charge of Court.**

Where, upon trial of theft of a horse by an accomplice, the State introduced the accomplice in another offense prior to the theft for which defendant was being tried, and which said witness was neither directly nor indirectly connected with the theft of the instant case, there was no error in the court's failure to charge either that said witness was an accomplice in the instant case, or that he was an accomplice in the other theft which was purely collateral matter.

**7.—Same—Charge of Court—Article 743, Code Criminal Procedure.**

Where, upon trial of theft of a horse as an accomplice, the testimony of another offense was introduced by an accomplice thereto without objection, and the appellant for the first time raised the question of the court's failure to charge on said accomplice testimony in his amended motion, and there being no injury shown to the rights of defendant, there was no error under Article 743, Code Criminal Procedure.

Appeal from the District Court of Hunt. Tried below before the Hon. R. L. Porter.

Appeal from a conviction of theft of a horse, as an accomplice; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. G. Matthews,* for appellant.—On question of court's failure to charge on accomplice testimony with reference to the purchaser of the horse alleged to have been stolen: Johnson v. State, 58 Texas Crim. Rep., 244; 125 S. W. Rep., 16.

On question of the court's failure to limit testimony of other offenses: Taylor v. State, 17 Texas Crim. App., 46; Carroll v. State, 58 S. W. Rep., 340; Brown v. State, 24 Texas Crim. App., 170; Thomas v. State, 66 Texas Crim. Rep., 374; 147 S. W. Rep., 262; Irvin v. State, 1 Texas Crim. App., 301; Parr v. State, 38 S. W. Rep., 180.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of other offenses where testimony must be limited: Thornley v. State, 36 Texas Crim. Rep., 118; Martin v. State, 36 id., 125; Saldiver v. State, 55 id., 176; Gardner v. State, 55 id., 394; Wheeler v. State, 23 Texas Crim. App., 598; Burks v. State, 24 id., 326; Barnes v. State, 28 id., 29; Hanley v. State, 28 id., 375; McCall v. State, 14 id., 353; Riley v. State, 29 S. W. Rep., 40.

On question of other offenses where testimony need not be limited: Leeper v. State, 29 Texas Crim App., 63; Franklin v. State, 38 Texas Crim. Rep., 346; Sue v. State, 52 id., 122; Rice v. State, 54 id., 149; Wright v. State, 56 id., 353; Malcek v. State, 33 id., 14; Brown v.

State, 41 id., 232; Harrold v. State, 46 id., 568; Wilson v. State, 60 Texas Crim. Rep., 1; 129 S. W. Rep., 613.

PRENDERGAST, Judge.—Appellant was convicted as an accomplice to horse-theft and given the lowest penalty.

The horse was charged to have been stolen by Monroe Adams. Adams testified against appellant and was sufficiently corroborated. The evidence was sufficient to establish that the day of the night of the theft appellant and Adams were together in appellant's field, where they had some conversation in the presence and in connection with others then present, about going to the Dallas Fair. When Adams got ready to leave and started, appellant accompanied him some distance from these others who were then at work, down to a certain gate, where they stopped and talked privately for some time. Adams testified that at this time they talked about going to the Dallas Fair, the next day, and he then told appellant he had no money to make the trip on; that appellant thereupon suggested that he, Adams, steal a horse that night, in effect designating the Hoard sorrel mare, ride it to Dallas, come back on the train to Royse and meet him the next day, and that he, appellant, would assist him in making the sale of the horse in Dallas, and that appellant loaned him $3 at that time for that purpose; that in accordance with that agreement, Adams did steal the Hoard sorrel mare, charged to have been stolen in the indictment, rode her to Dallas that night, arrived there in the night or early the next morning and put the mare in a certain wagon yard; that he took the morning train from Dallas and went back to Royse, where the appellant met him in accordance with the agreement. There were some three other persons, some of them relatives of appellant, who also were in Royse on that occasion and they all, that evening, went to Dallas; that appellant asked him, when he saw him in Royse on that occasion, how he had come out, and he told him all right. The appellant and Adams and the other accompanying parties, the others being in no way connected with the theft, went to Dallas on the late evening train. The five persons, after going around over the city somewhat, late at night, went to bed in the same room, the other three persons occupying one bed and appellant and Adams another. That early the next morning, Adams and appellant got up before the other three, slipped out and, after getting breakfast, Adams went to the wagon yard where he had put said mare, took her out of that wagon yard, and took her some distance to another, where he offered her for sale. Appellant met him at this wagon yard, where he was offering the mare for sale, and assisted him, and was present when he made the sale. It seems that Adams was a tall young man, seventeen or eighteen years old, and while only that old, was married; that he had worked as a hired hand for appellant and had been with appellant a good deal during the year the mare was stolen. Adams offered the mare to various

persons, first pricing her at $85. Several persons attempted to buy her on this occasion, but the highest offer he had for her before he began dickering with Miller & Gillespie, was $50.

Miller & Gillespie were horse buyers and traders and had been buying horses on this occasion and lacked only a few, or perhaps one, of making up a sufficient number to ship away from there for sale. Their attention was called to the fact that Adams was trying to sell this mare and had been trying to sell her to others and they thereupon approached him about buying her. After dickering for some time, Miller & Gillespie, or Miller for them, offered Adams $65 for the mare, saddle and bridle. The saddle and bridle were second hand and had been used for some time. After dickering some time, Adams first asking more for the mare, he finally agreed to take $65 for her. Appellant was present at this time and Miller & Gillespie began to inquire of Adams about the title of the mare, and, seeing he was a young fellow, also about his age and whether or not he could sell and make a good title to the mare. Adams gave his name to these parties at the time as Muggins Scott, instead of his true name, Monroe Adams, and appellant went under the name of Elmer Reed. After agreeing upon the purchase of the mare at the stated price, they then asked him where he lived and he stated that he lived at Emory. When asked what county Emory was in he could not give the county. They thereupon asked appellant if he knew what county Emory was in and appellant could not tell. They then talked about telephoning to somebody at Emory to learn about Adams, but Adams protested he had no money to pay telephone charges. They thereupon asked appellant if he knew Adams and what about him, when appellant replied that he did know him and that Adams was perfectly all right and responsible, and appellant then suggested to the parties and to Adams, that he, Adams, had a brother-in-law, a barber, who lived in Dallas and suggested that they see Adams' brother-in-law about him; that was agreed upon by all parties and they all four started from there to hunt Adams' brother-in-law to ascertain whether Adams was all right and could make title to the mare. In going from the wagon yard to hunt up Adams' brother-in-law they all started together, but appellant soon suggested it was unnecessary for him to go with them and he quit them. The others went to Adams' brother-in-law and upon finding him in a barbershop, asked him about Adams, and his brother-in-law told them that Adams was all right, was a married man and was trading for himself; they thereupon became satisfied, concluded to trade and gave him a check for the money and took the mare. It is not shown that Adams and appellant were together any more that day until about or after night, when they met with the other three persons, whom they had stayed at the hotel with, at the depot. Adams claims in substance that he then informed appellant of what had been done about the sale of said mare, and then turned over to him $10 of the money.

They all talked about returning home that night, but at the instance of Adams they finally concluded not to do so, he claiming that he was flush with money and proceeded to loan two or three of the others some money; besides, as he claimed, turning over to the appellant $10 of the money that he had gotten from the proceeds of the sale of said mare. He further testified that when appellant first suggested to him to steal the mare, and telling him that he would assist him in making the sale of her at Dallas, they agreed that they would divide the proceeds of the sale. Appellant also testified on the trial and denied advising Adams to steal the mare and claimed that his meeting him at Royse the evening of the day after he had stolen her the night before, and going with him to Dallas, and their sleeping together that night and getting up and slipping out before their other three companions got up, and his meeting Adams at the wagon yard, and what he said and did there, was all accidental, or not by pre-arrangement, and denied that Adams had paid him any of the money.

The court charged that Adams was an accomplice and gave a correct charge, to which there is no complaint, stating that he was an accomplice and that appellant could not be convicted upon his testimony without the proper corroboration, etc.

Appellant claims that the testimony was insufficient to sustain the conviction. We have carefully gone over it and in our opinion it was amply sufficient to sustain the conviction. Evidently the jury and the court below believed the State's witnesses and did not believe appellant.

Appellant also complains that the evidence tends to show that Miller, the purchaser of the mare from Adams, was an accomplice. He asked no special charge to that effect on the trial, and the first time he complains is in an amended motion for new trial. He then complained that the court erred in not submitting the question to the jury of whether or not Miller, said purchaser, was an accomplice and charging on that subject. In our opinion the evidence did not raise the question, hence, the court should not have charged on that subject.

The State also introduced uncontradicted evidence clearly showing that said Adams and Lewis White, together, stole another horse,— colt,—about two weeks or more before this Hoard mare was stolen by said Adams, known as, and designated by all the witnesses, the Cookson colt, and that they took that Cookson colt to Greenville in Hunt County about two weeks or more before the theft of the Hoard mare, and disposed of it with the assistance of appellant, and he got part of the proceeds, under circumstances somewhat similar to the disposition of the Hoard mare. There was no objection whatever to the introduction of this evidence, and no charge whatever requested by appellant on the subject.

By his amended motion for new trial, appellant, for the first time,

complains that the court erred in omitting to charge: ''(1) the theft or not of the Cookson horse,'' and it ''(2) must be found to have been a theft.'' The theft of the Cookson colt was clearly proven by both Monroe Adams and Lewis White, and so conceded by appellant himself on this trial, and was not disputed. Hence it was not reversible error to fail to submit to the jury for a finding, what was without contradiction clearly established, even if it had been proper to submit that collateral question at all. Holliday v. State, 35 Texas Crim. Rep., 133; Nelson v. State, 35 Texas Crim. Rep., 205; Tracy v. State, 44 Texas Crim. Rep., 9; Elizardo v. State, 31 Texas Crim. Rep., 237; Pearce v. State, 35 Texas Crim. Rep., 150; Height v. State, 150 S. W. Rep., 908. ''(3) That defendant is on trial alone for the offense charged in the indictment * * * and cannot be convicted for any other offense or upon any other transaction,'' and ''(4) that any evidence introduced of and concerning the theft of the Cookson horse, or the defendant's connection with it, was admitted for the purpose of illustrating the motive, system and intent of defendant in committing theft of the horse for which he was on trial.''

It is the settled law of this State that it is only when proof of another offense is such that the jury might use that testimony improperly to convict for that collateral offense, instead of the offense charged and on trial, or make some other unwarranted use of that testimony to the prejudice of the defendant that it is necessary for the court to charge limiting the purpose for which such evidence is admissible. Where the testimony is simply used to prove up the case as res gestae, or to prove any fact that forms a part and parcel of the case on trial so as to show the defendant's guilt, it is not necessary to charge limiting the effect of such testimony. These principles are so accurately and tersely expressed by Judge Hurt for this court, after the most careful consideration, in Thornley v. State, 36 Texas Crim. Rep., 118, we quote it: ''Where the testimony is simply used to prove up the case as res gestae, or to prove any other fact that forms a part and parcel of the case, so as to show the defendant's guilt, and there is no probability of the jury convicting for the offense not charged, it is not necessary to limit the effect of the testimony. In fact, it is only necessary for the court to charge upon and limit said testimony when there is danger of a conviction for the offense not charged, or of an unwarranted use of the testimony to the prejudice of the defendant in the case in which he is being tried.'' Moseley v. State, 36 Texas Crim. Rep., 578; Leeper v. State, 29 Texas Crim. App., 63; Dugat v. State, 67 Texas Crim. Rep., 46, 148; S. W., 789, and cases there cited; Branch's Crim. Law, sec. 367 and cases there cited; Wright v. State, 56 Texas Crim. Rep., 353; Leslie v. State, 47 S. W. Rep., 367. This is not in conflict with the text and cases cited in Branch's Crim. Law, sec. 366, for it was held that evidence of other or collateral crimes was not admissible at all in those cases, and many others on the same line, or if

the evidence was admissible, that it could be used to convict for such offense not charged, or for some other improper and injurious purpose. Take as an illustration of the first point, that the testimony was wholly inadmissible, Saldiver v. State, 55 Texas Crim. Rep., 176. Saldiver was charged with burglary of a certain house. On the trial, the State, over his objections, was permitted to prove other burglaries, one the day before, another the same day, and showed that stolen goods of those other two burglaries were found in his possession. Proof of these other burglaries was held inadmissible because "they serve to illustrate no point in this case." But the court also said: "Had appellant given an account of the property found in his possession taken from the burglarized house set out in the indictment, explanatory of innocent possession, the fact that he had possession of other stolen property taken from other burglarized houses, might have served to illustrate some questions which tended to connect him with this offense, but there was no evidence of this character. Appellant said nothing, and offered no testimony explanatory of his possession of the goods taken from the house set out in the indictment. The introduction of this testimony was injurious. It served to illustrate no purpose in the case and was not admissible."

Again, take as an illustration of the other point, Reno v. State, 25 Texas Crim. App., 110. In that case Reno was indicted for the theft of a horse from J. J. Davis. The court said: "It appears in evidence that at the same time and place of the theft of the horse named in the indictment, another horse, together with a saddle, was stolen, and the evidence which connects the defendant with the theft of the horse named in the indictment connects him also with the theft of said other horse and with the saddle.

"While this evidence of the theft of said other horse and the saddle was competent, and was not objected to by the defendant, still it was incumbent upon the court, in its charge to the jury, to explain the purposes for which such testimony was admitted, and to instruct and direct the jury that it could only be considered for those purposes, and that the defendant could not be convicted under this indictment for any other theft than the theft of the horse named in the indictment." There are a great many other cases along these same lines. So there are on the line we have cited above, maintaining our views in this case. Unfortunately, many of the decided cases do not always keep these distinctions clear. They frequently cite one or the other of these lines of decisions when possibly inapplicable to that particular case.

Unquestionably in this case, evidence was admissible to show appellant helped Adams and White to sell, and received a part of the proceeds of said stolen Cookson colt, in order to show his motive, system and intent in helping to dispose of the stolen Hoard mare, in view of his testimony claiming that he was only innocently present and

only innocently helping Adams dispose of said Hoard mare and did not receive a part of the proceeds of the sale thereof. Appellant made no objections whatever to the introduction of said testimony, and in no way, in the lower court contended, nor does he in this court contend, that said evidence was inadmissible.

Now, let us apply the pleadings, evidence, charge and verdict in this case to see if the jury did or could have used the testimony about the Cookson colt to convict appellant as an accomplice to the theft by Adams and White of that colt; or could have used that testimony for any purpose other than, as appellant so aptly states it, "for the purpose of illustrating the motive, system and intent of defendant in committing theft of the horse for which he was on trial."

While there are several counts in the indictment, the court specifically submitted only the second, which was: (Omitting the formal part), "That Monroe Adams, on or about the 19th day of October, A. D. 1911, and anterior to the presentment of this indictment, in the County of Hunt and State of Texas, did then and there unlawfully and fraudulently take from the possession of H. J. Hoard a horse, the same then and there being the corporeal personal property of and belonging to the said H. J. Hoard, without the consent of the said H. J. Hoard, and with the intent then and there on the part of him, the said Monroe Adams, to deprive the said H. J. Hoard of the value of the same and to appropriate the said horse to the use and benefit of him, the said Monroe Adams; and   *   *   * that I. A. Bailey, in the County of Hunt and State of Texas, and anterior to the presentment of this indictment, and before the commission of the said theft of the horse by the said Monroe Adams aforesaid, to-wit: on or about the 18th day of October, A. D. 1911, did unlawfully and faudulently advise, command and encourage the said Monroe Adams to do and commit the said theft of the horse, as above alleged, he, the said I. A. Bailey, not being personally present when said offense was committed by the said Monroe Adams."

There is nothing whatever directly or indirectly, in this count of the indictment about the Cookson colt, nor anything therein which can be tortured into anything about the Cookson colt.

The evidence shows that the evening before the Hoard mare was stolen, appellant advised Adams to steal a horse that night, ride it to Dallas and he would help him there to dispose of it. Adams told him he didn't know where to get a horse; appellant directed him to get one out of the Thompson pasture, and they then discussed, and, in effect, agreed that it should be said Hoard sorrel mare. Adams alone that night stole said Hoard mare, rode it to Dallas that night, appellant then met him, went to Dallas with him, where he assisted Adams the next day to sell her to Miller & Gillespie in Dallas, and they had a partial division of the proceeds. They got $65 cash for her. All this occurred on October 18, 19, and 20, 1911.

Some two weeks or more before this, said Adams and one Lewis

White together, stole the Cookson colt out of the Kuykendall prairie or pasture and took it to Greenville in Hunt County. Appellant did not advise these parties or either of them to steal said colt or any other horse at or prior to said time and did not know they had done so until the next day, when he met them in Greenville. They then and there, for the first time, told him of their theft of this colt the night before and sought and obtained his aid in disposing of that colt in Greenville for part of the proceeds thereof. They got $35 cash and an old gray horse for said Cookson colt.

It is thus seen that the mare that Adams alone is charged in said count of the indictment to have stolen, and as an accomplice for the theft of which appellant was on trial and convicted, was shown, without doubt and without question, to be a sorrel mare and to belong to H. J. Hoard and to have been stolen from him by Adams alone on October 18 or 19. This mare was thoroughly identified as the one Adams sold to Miller & Gillespie in Dallas on or about October 20, 1911, with appellant's assistance. The other colt, described by all the witnesses as a colt, was stolen some two weeks or more before the Hoard mare was stolen, and belonged to a man by the name of Cookson, and was stolen,—not by Adams alone,—but by him and Lewis White together and was taken to Greenville in Hunt County, where appellant assisted them there to sell it and got a part of the proceeds of that sale. The two transactions were entirely separate and distinct, the description of the horses was entirely different, and neither could be mistaken for the other. They belonged to different persons and were stolen from different localities and out of different pastures and were disposed of at different places and at different times.

The court, in submitting the issues for a finding, clearly and distinctly required the jury to believe beyond a reasonable doubt, that Adams unlawfully and fraudulently took from the possession of said Hoard—not from any other—a horse on or about October 19, 1911, without Hoard's knowledge and consent, etc., and further required the jury to believe beyond a reasonable doubt that appellant, before the commission of the theft of that horse—not any other—did unlawfully and fraudulently advise, command or encourage the said Adams to do and commit the theft of that horse—not any other—before they could find the appellant guilty; and further charged, in a separate paragraph, that if they had a reasonable doubt as to whether appellant advised, commanded, or encouraged said Adams to commit the theft of the Hoard horse—not any other—to acquit him.

The verdict of the jury is very significant. It is: "We, the jury, find the defendant, I. A. Bailey, guilty as charged in the second count of the indictment, and we assess his punishment at two years' confinement in the penitentiary."

From all this, it is undoubtedly shown that appellant was on trial and convicted alone for the offense charged in the above copied count of the indictment, and could not have been and was not convicted

for any other offense or upon any other transaction; and that the evidence of and concerning the theft of the Cookson colt, or the appellant's connection therewith was admitted and considered alone for the purpose of showing his motive, system and intent in the theft of the Hoard mare, or rather his advising, commanding or encouraging Adams to steal her. Hence, none of appellant's contentions on this point show any reversible error. ·

The only other complaint by appellant was also presented first in the court below by his amended motion for new trial. It is: ''The court erred in his failure to apply the law of accomplices to Lewis White, but should have instructed the jury that if Lewis White was an accomplice, or if they believed he was an accomplice to the taking of the Cookson horse, then, before they could convict the defendant upon his testimony, they would have to find that the same was true, and that it showed the guilt of the defendant, and that the same was corroborated by other testimony tending to connect the defendant with the commission of the offense, for the reason that said charge was material to the defendant; second, that said Lewis White was a material witness for the State to establish the theft of the Cookson horse; third, the testimony of the said Lewis White in the Cookson case was material to the State in establishing the motive, and intent of the defendant in this case, the purpose alone for which it could be used in this case. To which action of the court in his failure to so instruct the jury the defendant excepts, as will fully appear in bill of exceptions No. 3.'' There is no bill No. 3, or other bill in the record.

The evidence in no way intimates, and as we understand, appellant in no way claims, that Lewis White was in any way, either directly or indirectly, connected with the theft by Adams, or the disposition, of the Hoard mare. No charge whatever was, therefore, necessary or proper to be given as to his being an accomplice to the theft of the Hoard mare. As stated above, the court did give a charge that Adams was an accomplice to the theft of the Hoard mare, and required, by proper charge, that his testimony should be corroborated as to the theft of that mare so far as appellant was concerned.

It is uncertain from the last above quoted ground of complaint of appellant whether his contention is that the court should have submitted whether Lewis White was an accomplice to the theft of the Hoard mare, or to that of the Cookson colt. But we will discuss the question from the standpoint that appellant's contention is that the court should have given a proper charge on the theory that he was an accomplice in the theft of the Cookson colt. It is elementary, since the enactment of Art. 743 Criminal Court Procedure as it now is, that we can consider only such objections to charges given or omitted, which are raised in the court below, either by bill of exceptions or motion for new trial. There is no bill of exception in the record on this or any other point. The question is then raised solely

by this amended motion for new trial, copied in full above. No complaint whatever was made in the court below, or in this, that the court should have given, or failed to give, any charge to the effect that said Adams was an accomplice to the theft of the Cookson colt. He testified fully and substantially as to that transaction, the same as Lewis White did. "It is well settled in this State that the erroneous admission of testimony is not cause for reversal if the same fact is proven by other testimony not objected to." Wagner v. State, 53 Texas Crim. Rep., 306; West v. State, 2 Texas Crim. App., 460. We think the same principle applies to this question. If White was an accomplice to the theft of the Cookson colt, certainly Adams was. As Adams testified fully and substantially the same on this point, and no objection whatever is made in this or the lower court of the omission by the court to charge that Adams was an accomplice, etc., no reversible error is shown when such charge was not given as to Lewis.

Again, we think it was unnecessary to charge that White was an accomplice to the theft of the Cookson colt in this case, because that was solely a collateral matter. The court does not always, tho' sometimes does, have to charge on collateral matters, for, if it always had to be done, the main issue, and the merits of the case on trial, would, in all probability in most cases, be entirely lost sight of. As an illustration, the State, if it had been a fact, could have proven a large number of collateral thefts and the disposition of stolen property with which appellant was directly connected, as he was with the Cookson colt. Then if the court had to charge as to each of these several collateral thefts, the same as if the party on trial for each of them, then most assuredly the main issue in the case on trial would be lost sight of and the jury's minds and their attention distracted from the main issue to these several collateral matters. Again, White's testimony in no way was essential to connect, nor did it in fact connect, appellant with the theft of the Hoard mare. It simply and solely connected him with the disposition of the Cookson stolen colt. Appellant's connection with the Cookson colt and all the testimony in the record thereabout, was introduced solely for the purpose of showing appellant's motive, system and intent of the disposition of the Hoard mare stolen by Adams. So that, altogether, in view of said Art. 743, which specifically prohibits this court from reversing a case wherein an omission has been made in the charge of the court, unless such error "was calculated to injure the rights of the defendant," it is our opinion that appellant's contention on this point presents no reversible error. The judgment is, therefore, affirmed.

*Affirmed.*

DAVIDSON, Presiding Judge, dissents.