2. CRIMINAL LAW ⊙═595 — CONTINUANCE — GROUNDS—INTOXICATION OF WITNESSES.

In a criminal prosecution, it was not error to refuse a continuance, where the affidavit of the absent witness stated that he had seen the prosecuting witness intoxicated at about the time the offense was alleged to have been committed; the fact of the witness' intoxication not rendering him incompetent.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1311, 1323–1327; Dec. Dig. ⊙═595.]

Appeal from Fannin County Court; S. F. Leslie, Judge.

Callie Fletcher was convicted of giving the name of his wife to another for the purpose of enabling the latter to have sexual intercourse with her, and he appeals. Affirmed.

E. S. McAlester and Thos. P. Steger, both of Bonham, for appellant. C. C. McDonald, Asst. Atty. Gen., for the State.

DAVIDSON, J. The charging part of the affidavit and information is that on or about the 13th day of February, 1915, Callie Fletcher unlawfully gave to Albert Crittenden the name of Ida Fletcher for the purpose of enabling Albert Crittenden to have unlawful sexual intercourse with and to meet said Ida Fletcher.

[1] The facts are less than a page in length, and are made alone by the testimony of Albert Crittenden. He says:

"I am a single person, and room over the Ragsdale Building, over what is called Sid Smith's store. I keep a room furnished there, and, in addition to the ordinary furniture of an unmarried man, I keep a small oil cooking stove. I keep this to cook game on some time, as I hunt a good deal. I do not eat there regularly, and only have this stove to cook game on when I desire. I know the defendant, Callie Fletcher. There he sits in the courtroom. About the 13th day of February he came to my room. There was no one there but he and I. After remaining in my room some time, he asked me what I was doing with that stove. I told him I kept it there, and sometimes cooked my game on it after going hunting. He said to me that he would bring his wife, Ida, up there, and she could cook me a meal on it. I told him I did not eat here in the room, but only used the stove to cook game on occasionally. The defendant said that was all right; he would bring his wife, Ida, up there and leave her with me, and she would cook me a good meal. I said, 'No,' and the defendant said he would bring Ida, his wife, up there and leave us alone there together and would go off. He said, 'You know Ida.' I said to him, "Callie, you are a damn fool,' and got up and left, he coming with me."

This is the entire statement of facts, except the venue and date.

[2] Under our statute this testimony is sufficient to prove the case. Appellant asked for a continuance, which was overruled and made a ground of the motion for new trial. The absent witness, Cole, filed an affidavit in connection with the motion for new trial as to what his testimony would be. He says that he was acquainted with defendant and the prosecuting witness, Crittenden; that he (witness) had been summoned as a witness for the defendant, Fletcher; that on the 13th day of February, 1915, he saw Crittenden several times, and that on said date, immediately before and after the occasion on which defendant is alleged to have made certain statements to the witness Crittenden, on which statements the affidavit and information is based, he (said witness Cole) was with Crittenden in his (Crittenden's) place of business, and that on each of said occasions the witness Crittenden was drunk. We are of opinion there was no error in refusing this continuance. This witness does not show the state of drunkenness, or that he was too drunk to know what he was doing. If he was drunk at the time he was in his room, that fact could have been proved by Crittenden, or he could have been asked about it. This seems not to have been done. The mental status of a defendant by being drunk would not be an excuse for crime, and it could only be given in mitigation, if it is worth anything, and the inconclusiveness of the statement of Cole does not place the matter in such attitude the defendant is entitled, we think, to the continuance. The same rule or similar reasoning would apply to witness' testimony. It would not render him incompetent as a witness ordinarily. It was not sought to even prove by present testimony such condition.

The judgment therefore will be affirmed.

---

McDONALD v. STATE. (No. 3704.)

(Court of Criminal Appeals of Texas. Oct. 27, 1915.)

1. CRIMINAL LAW ⊙═844 — INSTRUCTIONS — GENERALITY OF OBJECTIONS.

The objection to a charge that it did not directly submit the issues as raised by the evidence, and did not instruct on certain named subjects, is too general to point out any specific error, as required by the statute.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2025; Dec. Dig. ⊙═844.]

2. CRIMINAL LAW ⊙═1169—HARMLESS ERROR —ADMITTING AND STRIKING EVIDENCE—ADMISSION OF EVIDENCE.

Admission of evidence of propositions of defendant in seduction to witness was harmless, where it was stricken out, and the jury instructed to disregard it; the jury having assessed the lowest punishment.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 754, 3088, 3130, 3137–3143; Dec. Dig. ⊙═1169.]

3. CRIMINAL LAW ⊙═398 — EVIDENCE — CONTENTS OF LOST LETTER.

Witness, having lost a letter to her, could testify to its contents.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 879–886; Dec. Dig. ⊙═398.]

4. CRIMINAL LAW ⊙═1169 — RECEPTION OF EVIDENCE—OBJECTIONS.

Where proper objection was not made till after witness had testified to part of the contents of a letter, and was then sustained, there was no error; the court having previously instructed that, under such circumstances, testimony should not be considered.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 754, 3088, 3130, 3137–3143; Dec. Dig. ⊙═1169.]

5. WITNESSES ☞369 — IMPEACHING TESTIMONY.

To impeach a witness for defendant in seduction, the state may show witness prescribed for prosecutrix to produce an abortion.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1187, 1188; Dec. Dig. ☞369.]

6. CRIMINAL LAW ☞1169—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Erroneous admission of testimony is not ground for reversal; the same fact having been testified to by another, without objection.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 754, 3088, 3130, 3137–3143; Dec. Dig. ☞1169.]

7. CRIMINAL LAW ☞413—EVIDENCE—SELF-SERVING DECLARATIONS.

Refusing to allow defendant in seduction to show his previous statements to persons of his contemplated marriage to another than prosecutrix, it not being shown or attempted to be shown that they had been communicated directly or indirectly to prosecutrix, was not error, but it was enough to allow him to show that they had also been made to other persons more likely to communicate them to prosecutrix.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 928–935; Dec. Dig. ☞413.]

8. AFFIDAVITS ☞5 — AUTHORITY TO TAKE — ATTORNEY OF ACCUSED.

Affidavits sworn to before defendant's attorney are not entitled to consideration on his motion for new trial.

[Ed. Note.—For other cases, see Affidavits, Cent. Dig. §§ 18–27; Dec. Dig. ☞5.]

9. CRIMINAL LAW ☞1156—APPEAL—DISCRETION—DENIAL OF NEW TRIAL.

Denial of a new trial on the ground of newly discovered evidence will not be disturbed, unless it appears that the trial court abused its discretion to defendant's prejudice.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3067–3071; Dec. Dig. ☞1156.]

Appeal from District Court, Denton County; C. F. Spencer, Judge.

J. T. McDonald was convicted, and appeals. Affirmed.

Owsley & Owsley, of Denton, for appellant. C. C. McDonald, Asst. Atty. Gen., for the State.

PRENDERGAST, P. J. Appellant was convicted of seduction, and assessed the lowest punishment. It is useless to detail or discuss the evidence. There can be no question as to its sufficiency to sustain the verdict. There was some conflict in the evidence. That of the appellant and his witnesses, if believed, would have been sufficient to have authorized his acquittal. That question was for the jury, however, and not for this court. The prosecutrix was amply corroborated. Williams v. State, 59 Tex. Cr. R. 347, 128 S. W. 1120; Beeson v. State, 60 Tex. Cr. R. 39, 130 S. W. 1006; Nash v. State, 61 Tex. Cr. R. 269, 281, 134 S. W. 709; Gillespie v. State, 73 Tex. Cr. R. 602, 603, 166 S. W. 135.

[1] The only objections to the charge of the court, after it had been submitted to appellant's attorneys, and before it was read to the jury were "that the same did not directly submit the issues as raised by the evidence, and did not instruct on lust, passion, or fear," and that the court refused to give his 11 special charges. These objections, under all of the decisions, are too general to point out any specific error, as required by the statute. However, we may discuss his refused charges herein later. The court gave a full and correct charge submitting every question raised by the evidence.

[2] Appellant has several bills to the admission and exclusion of certain evidence and the action of the court pertaining thereto. His first sets up that, while Renza Mitchell, the mother of the prosecutrix, was on the stand, certain questions and her answers thereto, which are copied in the bill, making some six typewritten pages, were had. This bill gives the questions and answers, his objections to some of them, the court's ruling, what the district attorney said, etc. The court, in approving the bill, did so with this qualification:

"When this witness was on the stand, she did not speak very plainly and talk from the point, as is often the case with negro witnesses, and her testimony up to the statement, in substance, that the defendant had made a proposition to her for carnal intercourse, would hardly indicate that she had such in mind, but I understood therefrom that she was meaning a conversation with defendant regarding his mistreatment of her daughter, who was a pupil of the defendant in the colored school at Denton. So soon as it became apparent that she had in mind an illicit proposition to herself by defendant, I immediately struck out the testimony, and instructed the jury not to consider the same. I think the proceeding had no effect on the jury whatever."

In our opinion, this bill, as explained by the judge, presents no reversible error. The jury assessed the lowest punishment. Miller v. State, 31 Tex. Cr. R. 636, 21 S. W. 925, 37 Am. St. Rep. 836; Hatcher v. State, 43 Tex. Cr. R. 239, 65 S. W. 97; Robinson v. State, 63 S. W. 869; Trotter v. State, 37 Tex. Cr. R. 474, 36 S. W. 278; Jones v. State, 33 Tex. Cr. R. 8, 23 S. W. 793; Morgan v. State, 31 Tex. Cr. R. 1, 18 S. W. 647; Sutton v. State, 2 Tex. App. 348; Roberts v. State, 48 Tex. Cr. R. 210, 87 S. W. 147; Martoni v. State, 167 S. W. 351.

[3, 4] In his next bill he complains that, when the witness Leta Mitchell, prosecutrix, was testifying, she was permitted, over his objections, first, to testify to the contents of a letter she had received from appellant. She testified that she had lost it. The court, in qualifying his bill on this point, states that she had lost that letter, which rendered its contents admissible. The court was correct in this. Then it appears the witness was asked about a letetr she had written to the appellant. As to this the court, in qualifying and approving the bill, said:

"With reference to the letter she claims to have written defendant, objection was sustained to her telling the contents. However, some parts of it she had told over objection of defendant, but, when the objection was made that defendant had been given no notice to produce

it, the objection was sustained, and I had previously stated to the jury that, when an objection was sustained to any proffered testimony, they should not consider it, even though some part of it had been heard by them, as it frequently occurs that a portion of a witness' answers appears unobjectionable, and more of it shows the whole to be inadmissible."

As qualified, this bill shows no error.

[5] In his next bill he complains of the testimony of Renza Mitchell, introduced in rebuttal, to the effect that in June, 1914, when her daughter, the prosecutrix, was sick, caused by her pregnancy, Mrs. Lawson, one of the defendant's material witnesses, called on her and gave her a prescription for cotton root to produce a miscarriage on Leta. What the prescription was is not otherwise disclosed than as stated. In approving the bill, the court qualified it as follows:

"This bill is approved, with the qualification that the witness Mrs. Lawson had testified in favor of the defendant and against the contention of the prosecutrix, and showed considerable interest in the defense, as the court thought, and this testimony was admissible, in the opinion of the court, as affecting the credibility of the said Mrs. Lawson, and was limited orally to the jury for such purpose, and perhaps in the charge, which is not now accessible."

The charge did so limit it. Mrs. Lawson denied that she had given any such prescription. Appellant contends that, as Mrs. Lawson so denied, the state was bound by her denial, as she was attempted to be impeached on an immaterial matter. His contention does not apply in this case. The law is well established that the opposite side may show animus and prejudice on the part of the adverse witness towards him and its extent, and that in such examination great latitude is allowed when the object is to impeach the credit of the witness; also that motives which operate on the mind of the witness when he testified are never regarded as immaterial or collateral matters. A party may prove declarations of the witness which tend to show bias, interest, prejudice, or any other mental state, or status, which, fairly construed, might tend to affect his credibility. Pope v. State, 65 Tex. Cr. R. 51, 143 S. W. 611; Earles v. State, 64 Tex. Cr. R. 537, 142 S. W. 1181; Cain v. State, 68 Tex. Cr. R. 517, 153 S. W. 147; Burnaman v. State, 70 Tex. Cr. R. 365, 159 S. W. 244, 46 L. R. A. (N. S.) 1001; and authorities in the opinions in said cases.

[6] Besides this, before Renza Mitchell testified, her daughter, Leta, had testified to the same thing, without any objection thereto by the appellant, as shown by this record. As frequently held by this court:

"The erroneous admission of testimony is not cause for reversal, if the same fact is proven by other testimony not objected to." Wagner v. State, 53 Tex. Cr. R. 307, 109 S. W. 169; Bailey v. State, 69 Tex. Cr. R. 484, 155 S. W. 536; Christie v. State, 69 Tex. Cr. R. 602, 155 S. W. 541; and many other cases.

[7] By other bills appellant complains that the court refused to permit him to prove by the superintendent and some of the trustees of the public schools at Denton, white men, that about June, 1913, when they first employed him as a teacher in the colored schools at Denton, he then told them he intended to get married, and that on another occasion he so told them. The court, in explanation of these bills, refusing to permit such testimony, shows that he did so because they were not shown or attempted to be shown to have been communicated, directly or indirectly, to the prosecutrix, and that they were therefore self-serving, but that all other testimony by all other negro witnesses (the appellant and the prosecutrix being negroes) as to statements by appellant of his approaching marriage with a woman other than prosecutrix, or his claimed intended marriage, were admitted, and that all other such statements, where it was thought prosecutrix would likely learn of it, were admitted. The record shows that many of the witnesses did testify to said declarations. These bills present no error.

Notwithstanding the court's refusal to give any of his special charges is not raised and presented in such a way that we could consider them, yet we have examined all of them, and, where proper to be given, they were clearly embraced in the court's charge, and those not so embraced should not have been given, and the refusal to give them presents no error.

[8, 9] The only other question is that appellant has the affidavits of three persons attached to his amended motion for new trial, claiming that they show newly discovered evidence which he claims ought to have resulted in the court's granting him a new trial. The first of these affidavits is sworn to before one of his attorneys, which as has been uniformly held prevents its consideration. Maples v. State, 60 Tex. Cr. R. 171, 131 S. W. 567, and many cases to the same effect. The appellant's motion on this ground was controverted and vigorously contested by the county attorney. It was all threshed out before the trial judge.

"It is well established by the decisions of this court that a motion for a new trial on this ground is closely scrutinized, and is largely confided to the discretion of the trial court; and the disposition there made of it will not be disturbed on appeal, unless it be apparent that the trial court abused its discretion to the prejudice of appellant. Burns v. State, 12 Tex. App. 269; Bell v. State, 1 Tex. App. 598; Templeton v. State, 5 Tex. App. 398; Shaw v. State, 27 Tex. 750; West v. State, 2 Tex. App. 209; Terry v. State, 3 Tex. App. 236.

"It is also well established that in a motion for new trial on this ground it is incumbent on the appellant to satisfy the court: (1) That the evidence has come to his knowledge since the former trial; (2) that it was not owing to want of due diligence on his part that it was not discovered and did not come to his knowledge before the trial; (3) that it is competent and material evidence, and not merely cumulative, corroborative, or collateral; (4) that it will probably produce a different verdict if a new trial is granted; (5) that it is not simply for the purpose of impeaching a former witness. If the application is defective in establishing any one of these essentials, a new trial should be

refused. Fisher v. State, 30 Tex. App. 502 [18 S. W. 90]; West v. State, supra; Duval v. State, 8 Tex. App. 370; Gross v. State, 4 Tex. App. 249; Hutchinson v. State, 6 Tex. App. 468." White's Ann. C. C. P. § 1149; Gray v. State, 65 Tex. Cr. R. 206, 207, 144 S. W. 283, 284.

We think the court's action in refusing a new trial on this ground was correct.

The judgment is affirmed.