Day, J.
In this case five grounds of error are urged:
First. That the court erred in overruling the demurrer to the second count of the indictment, for the following reasons:
(a) For failure to charge knowledge of the fact that the deceased was a policeman.
(h) That Section 12402-1, General Code, is unconstitutional, as inflicting “cruel and unusual punishment” in violation of Article I, Section 9 of the Constitution of Ohio, and that said section is in violation of Article II, Section 26 of the Ohio Constitution, providing:
“All laws, of a general nature, shall have a uniform operation throughout the state.”
(a) As to the failure to aver knowledge, the indictment did aver that the defendant “purposely and willfully killed Frank Hueftlein, a policeman, while he, the said Frank Hueftlein, was in the discharge of his duty.” The indictment followed the language of the statute, and, if the defendant “willfully and purposely killed a policeman while in the discharge of his duty,” he must have done it with knowledge that the person whom he killed was a policeman, for, if he willed to kill one who was a policeman while in the discharge of his duty, and purposely does the act, he does it designedly, and therefore knowingly.
The Century Dictionary defines “purposely” as designedly and knowingly. It is also defined as designedly. Hence we reach the conclusion that to *311 kill one who was “a policeman in the discharge of his duty” purposely and willfully is to kill him knowing him to he snch policeman in the discharge of his duty. If “knowingly” and “purposely’ ’ have a common meaning as designedly, the language used in the indictment of “willfully” and “purposely” irrefutably carries with it the element of knowledge.
The great purpose of the indictment is to advise the accused of the nature of the offense with which he is charged, and from the record we are entirely convinced that knowledge that the deceased was a policeman in the discharge of his duty was in the mind of the defendant at the time of the homicide, and that he committed the act, not only willfully and purposely, but also knowingly, and of that fact the indictment surely advised him.
Our attention is called to the cases of Birney v. State, 8 Ohio, 230, and Miller and Gibson v. State, 3 Ohio St., 475. The former was a case involving the harboring and secreting of a slave in violation of the act of 1804. In the opinion of the court in that case, at page 238, it is said:
“This knowledge should have been averred in the indictment, and proved on the trial, for, without such knowledge, the act charged as a crime was innocent in its character. We know of no case where positive action is held criminal, unless the intention accompanies the act, either expressly or necessarily inferred from the act itself. * ’* * It cannot be assumed that ah act which, independent of positive enactment, involves no moral wrong, nay, an act that in many cases would be highly praiseworthy, should be made grievously criminal, when performed in total unconsciousness of the facts that infect it with crime.”
*312 The fact that the act would be innocent in itself but for the statute, and the recognition by Judge Wood that in some crimes positive action is criminal when intention accompanies the act either expressly, or necessarily inferred from the act itself, and the further pregnant fact that the act itself would be “highly praiseworthy * * * when performed in total unconsciousness of the facts that infect it with crime,” sufficiently distinguish that case from the case at bar.
In the case of Miller and Gibson v. State, supra, the offense charged was a violation of the fourth section of the act of May 1, 1854 (52 O. L., 153), entitled, “An act to provide against the evils resulting from the sale of intoxicating liquors in the state of Ohio.” The court seems to have given general consideration to the act in question, although the defendants Miller and Gibson appear to have been charged with but the violation of the fourth section. In referring to the second and third sections (page 487) the court says:
“To convict for a violation of the 2d section, it is necessary to aver in the information, and prove on the trial, that the seller knew the buyer to be a minor; and to convict for a violation of the 3d section it is necessary to aver and prove, in like manner, that the seller knew the buyer to be intoxicated, or in the habit of getting intoxicated.”
Section 2 in question reads:
“That it shall be unlawful for any person or persons, by agent or otherwise, to sell intoxicating liquors to minors, unless upon the written order of their parents, guardians, or family physician.”
*313 And Section 3 of the act made it unlawful to sell liquor “to persons intoxicated, or who are in the habit of getting intoxicated.” Neither ,of these sections uses the words “willfully” and “purposely,” words that carry the idea of knowledge and design, such as are found in Section 12402-1, General Code. So we cannot regard Miller and Gibson v. State as sufficiently in point to be controlling in the case at bar. It may be noted in passing that the Supreme Court of Illinois refused to follow Miller and Gibson v. State, supra. Again, both of above cases relied upon by plaintiff in error involve offenses that are merely mala prohibita, not malum in se, and, the offenses being of such different character, and being found in statutes employing language so different, and not using the words “willfully,” and “purposely,” as does Section 12402-1, we do not regard either of them as authority sufficient to warrant the sustaining of the demurrer interposed to the second count of the indictment. Of course, upon trial, knowledge that the deceased was an officer, as named in the indictment, must be shown, and in the instant case the record shows that fact beyond a reasonable doubt.
(b) Is Section 12402-1, General Code, in violation of Section 9, Article I of the Constitution, which provides: “Nor cruel and unusual punishment inflicted1?” It is conceded that the death penalty inflicted by electrocution is not cruel, but it is claimed that such penalty is unusual when applied to one who has purposely and willfully killed a policeman in the discharge of his duty. We think the Legislature had a right, in the interest of giving greater protection to those who risk their lives *314 in protecting society from criminal aggression, to make the killing of such officer while in the discharge of his duty murder in the first degree and to provide the death penalty therefor. An attack upon the duly authorized officers of the government is an attack upon the government itself, and, not. only does clear constitutional authority exist for such classification of murder, but the preservation of government itself justifies it.
The term “unusual,” employed in Section 9, Article I of the Ohio Constitution, means the kind of punishment inflicted, and is not used in the sense urged by plaintiff in error. We are content to follow the language of Wilkerson v. Utah, 99 U. S., 130, 25 L. Ed., 345, as interpreting the meaning of the expression:
“Difficulty would attend the effort to define with exactness the extent of the constitutional provision which provides that cruel and unusual punishments shall not be inflicted; but it is safe to affirm that punishments .of torture, such as those mentioned in the commentator referred to [4 Blk. Com., 377, where the prisoner was drawn and dragged to the place of execution in treason; where he was emboweled alive; beheaded and quartered in high treason; cases of public dissection in murder; and if burning alive in treason committed by a female], and all others in the same line of unnecessary cruelty, are forbidden by that amendment of the Constitution.”
Nor are we of opinion that the statute in question violates Section 26, Article II of the Constitution, providing that—
*315 “All laws, of a general nature, shall have a uniform operation throughout the state.”
If the act in question applies uniformly throughout the state to all members of the class who come within the provisions of the class named, no violation .of constitutional right is shown.
Nor is it enough to say that, because Section 13493, General Code, provides that “when a felony has been committed, <my person without warrant, may arrest,” etc., this is designation of a class who do not come, within the provisions of Section 12402-1, General Code, yet may be subject to the same risks incident to the arrest and apprehension of criminals. One class is performing a duty, and the other is exercising a privilege very praiseworthy and highly commendable; but the Legislature had the undoubted right to designate to what class they would extend the provisions of Section 12402-1, General Code, and, as long as such section applied equally throughout the state to the class named, it would not violate constitutional provisions.
The persons named in the statute form a class whose employment and environment bring them in constant contact with risk and danger unknown to the average individual and other classes of society, and the Legislature may well have sought to give additional protection to the class named by making the killing of one while in discharge of his duty murder in the first degree. This doctrine is recognized in State v. Nelson, 52 Ohio St., 88, 39 N. E., 22, 26 L. R. A., 317, which case involved the constitutionality of the act providing that electric street cars should be provided with proper screens, and so forth, for motormen. It was urged that because *316 those operating horse oars or cable cars were not included it was class legislation, and violated Section 26, Article II of the Ohio Constitution. The law was upheld by this court, and in the opinion of Burket, J., on page 102 of 52 Ohio St., on page 23 of 39 N. E. (26 L. B. A., 317), this language is used:
“The sjcope and force of this section of our Constitution being as herein indicated, it is clear that the statute in question is not in conflict therewith. The statute is in operation in every part of the state, and operates uniformly upon the classes of persons therein designated, in every part of the state. The act is clearly authorized as a police regulation to protect the health and promote the comfort'of those engaged in operating electric cars. If there are other persons requiring protection, such protection should be sought through the General Assembly by increasing the protected class, rather than by removing all protection, through the action of the courts.”
The conclusion was in that case that the act was constitutional, and that the common pleas ¡court erred in sustaining the demurrer to an indictment drawn thereunder. See also, City of Xenia v. Schmidt, 101 Ohio St., 437, 130 N. E., 24. Authorities might be multiplied upon this point, but we deem the principle so well established we will not note others. We are therefore of the opinion that no error intervened in the overruling by the trial court of the demurrer to the second count of the indictment.
Second. The nest assignment of error is in the admission of evidence. This ground of error is well stated in the brief of plaintiff in error (page 18), and we quote therefrom:
*317 On cross-examination the defendant was asked the question: “Where were you on the 28th of February of this year?” (The killing of Hueftlein was on April 15, 1922.) Objection was sustained, and he was asked: “Is it not a fact that on that day you shot Guethlein and Hueftlein at Amanda Blymyer’s office that you knew that the police were looking for you for the robbery of the bank messengers of the First National Bank of Ludlow, Ky., on the 28th day of February of this year?” (Objection. Overruled. Exception.) The defendant answered: “I heard the police were looking for me.” He was then asked: “Is it not a fact that you were one of the party in the holdup of the messenger of that bank over in Kentucky on the 28th day of February?” (Objection. Overruled. Exception.) Defendant answered: “No, sir.” He was then asked where he was on the 28th day of February, and he answered at 712 Clark street, where he was sick. Clark street is in Cincinnati.
It is the contention of counsel for plaintiff in error that where Holt was on the 28th of February, 1922, was immaterial; that it had no connection with the killing of Hueftlein on April 15, 1922; that it was a collateral matter, and the state was bound by Holt’s answer. On rebuttal, however, the state called Clinton J. Snyder and Harold J. Nordloh, who each testified that on February 28, 1922, they were in the employ of the First National Bank of Ludlow, Ky., and that, while on a street car in Covington, Ky., .on that day, conveying money from the First National Bank of Cincinnati to the First National Bank of Ludlow, Ky., they were held up by three men who boarded the oar on which the wit *318 nesses were riding, and at the point of a revolver robbed them of the money which they had, and each of the witnesses testified that the defendant was one of the three who held them up. All of this was objected to, and motion made to strike ont, which was overruled, and exception taken.
Plaintiff in error claims that this testimony is entirely collateral and in no way connected with the offense charged in the indictment, and that its admission was prejudicial error. It is undoubtedly the rule that the state in criminal prosecutions may not retain until rebuttal evidence essential to make its case in chief, yet, if rebuttal testimony should develop that tended further to show elements of the offense charged in the indictment, the state is not to be deprived thereof simply because it might tend to further establish the elements of the erime charged.
It is urged that the testimony of the two bank messengers should have been put in as a part of the case of the state in chief as tending to prove motive and intent to kill the deceased, because defendant knew that deceased was a policeman, and that the police were looking for him.
The defendant having taken the stand in his own behalf, and having testified that the shooting of Hueftlein was purely accidental, and that he therefore did not purposely and willfully kill, it was proper for the state to meet and rebut this defense and theory of accident by asking the defendant if he had not taken part in a robbery some weeks before, and knew that the police were looking for him; thus to show that the shooting was not accidental, but intentional. When the defendant denied any connection with the Kentucky robbery, and per *319 sisted in Ms claim of accidental shooting, the state might rebnt and meet this testimony by showing that he was in fact in the Kentucky robbery in question, and knew that the police were looMng for him. We are of opinion that it was the proper subject of cross-examination, and also that the ¡state had a right to introduce this testimony in rebuttal to meet this defense interposed by the defendant.
It is urged that the court by proper instruction to the jury should have limited tMs testimony to motive. TMs testimony went not only to motive, but also to the defendant’s credibility, and, further, no request was made by defendant to limit it; but the defendant went forward upon cross-examination of the state’s rebuttal witnesses, and voluntarily showed that an indictment had be.en returned against Mm for this Kentucky crime, and was then pending. A further reason which prevents this testimony from prejudicing the rights of the defendant is the fact that it was clearly connected with the offense in question, to-wit, the purpose and intent to kill the policeman in the discharge of his duty, for the defendant admitted that he knew the police were looking for him, and the state showed the commission of the offense for which they were looking for him, to-wit, the bank robbery. It thus becomes apparent that the testimony is connected with and becomes a part of the very offense for which the plaintiff was upon trial, to-wit, purposely and willfully Mlling a policeman in the discharge of Ms duty.
It was discretionary with the court whether he should permit the state to introduce this testimony, after it had closed its case in chief; and, in the ab *320 sence of any application of the defendant below for an extension of time to meet this testimony, or any affirmative showing in the record that he was prejudiced by this order of proof, or any request to limit the same in its application, we are of opinion that no prejudicial error resulted to the defendant. The purpose of the trial was to elicit the truth upon the question whether the defendant was guilty or not guilty of intentionally and purposely killing a policeman in the discharge of his duty. We feel that the state was entitled to this testimony as a part of the offense charged, and that no prejudicial error has resulted from its admission.
Our attention is called to State v. Davis, 90 Ohio St., 100, 106 N. E., 770, Baxter v. State, 91 Ohio St., 167, 110 N. E., 456, and Shelton v. State, 106 Ohio St., 243, 140 N. E., 153.
In the Davis case soliciting a bribe was the offense, and proof was made of solicitations from other persons as well as from the person named in the indictment, at other times and places, thus making proof of several separate crimes of similar nature. No limitation was made by the court either a.t the time of the introduction of the evidence or in the charge. The jury might have well gathered the impression that they were trying the accused for some of the offenses other than the one named in the indictment, all being of similar character and involving some of the same parties. The verdict was rightly set aside for that reason.
In the Baxter case embezzlement was the charge, and all the crimes testified about were separate and distinct offenses, although of similar nature, yet not connected with the particular embezzlement charged *321 in the indictment, and the attention of the trial court was directly challenged to limiting the testimony to proof of motive. This omission to so limit was regarded as sufficient ground, among others, to warrant setting aside the verdict.
But in the case at bar the robbery was closely connected with the homicide, in that it furnished the motive for killing the deceased, in order to escape apprehension and arrest for the robbery. It is quite true that this proof might have been offered by the state in chief, as held in the Shelton case, supra, but the fact that it was offered in rebuttal in connection with the denial of the accident theory of the defendant, and in contradiction of the defendant’s account of his whereabouts on February 28, 1922, did not make it less receivable. The introduction of testimony out -of order is a matter that rests in the sound discretion of the trial court, and as long as no abuse of that discretion is shown to the prejudice of the accused no error intervenes.
In the instant case, at the close of the rebuttal testimony, no application was made by the defendant for additional time to meet the testimony of Snyder and Nordloh, who might have been called by the state in chief. If they had been called in chief, the defendant would have had to meet their testimony by calling on his own side such witnesses as he desired, to show that he was not the person referred to by Snyder and Nordloh, or to put in such proof as he desired in reference thereto.
The record does not disclose any disposition on the part of the court to refuse the defendant such privilege, if he had seen fit to ask for it, and we cannot say that he was prejudiced by the fact that Sny *322 der and Nordloh were called out of order; that is, in rebuttal, instead of in chief. Did failure of the court to limit this testimony of the Kentucky robbery to proof of motive prejudice the defendant? The robbery was so intimately connected with the homicide as to furnish a direct motive for it, even though there was a lapse of six weeks between the time of the robbery and the commission of the homicide. The defendant was avoiding arrest. He testified that he knew the police were looking for him, and the strongest kind of a moving cause for shooting the officer of the law was furnished by the fact that the defendant was confronted by the possibility of arrest and conviction for the robbery of February 28. The killing of Hueftlein was doubtless for the sole purpose of making his escape and avoiding arrest and apprehension for the robbery. This brings the two offenses into such interrelationship as to make one almost a part of the other, and the homicide a logical sequence from the commission of the robbery. The robbery, therefore, was not such a separate and distinct offense, or such similar offense, as to bring it within the rule of State v. Davis and Baxter v. State, supra, and the rule of evidence announced therein does not apply.
The reason for the limitation of testimony of such character as outlined in the above two cases is found in the principle that a man cannot be held to answer for any other offense than the one named in the indictment; that he shall not be prejudiced in the minds of the jury through belief of his guilt of other offenses, and therefore probably guilty of the offense laid in the indictment. It therefore is fitting that the court should caution the jury that the evi *323 dence is received solely for the purpose of showing motive for the offense charged. But in the case at bar the jury could not have been misled, as the Kentucky robbery could have had no possible bearing except upon the question of motive, and, further, the record shows that the accused at the time of the trial for the homicide was under indictment in Kentucky for the robbery in question, so that the jury could not think that it was any part of their duty to try that case. The robbery being so intimately connected with the homicide in furnishing the motive therefor, and being in a sense a part thereof, we do not believe that the failure of the court to limit such testimony to proof of motive was prejudicial. Further, it is not to be overlooked that the testimony also went to the issuable fact of the accidental shooting, as well as the credibility of the defendant on the stand.
We have examined carefully the able opinion in Shelton v. State, supra, and we find nothing therein that prevents the application of the doctrine announced herein, and, even though the trial court in that case limited and restricted the testimony of the prior offense, the decision of that case does not conflict with the principles herein announced.
We call attention to the following from 1'6 Corpus Juris, at page 856:
“But it is only when proof of another offense is such that the jury might use it improperly to convict for that collateral offense instead of the offense charged, or make some other unwarranted use of that testimony to the prejudice of defendant, that it is necessary for the court to charge limiting the purpose for which such evidence is admissible; and it is *324 not necessary to give an instruction limiting the purpose of admitting such evidence where the purpose is clearly apparent, or where the evidence admitted to show motive or intent is of acts which may well be supposed to have been done in furtherance of such motive or intent.”
To the same effect are the following authorities: Bailey v. State, 69 Tex. Cr. R., 474, syl. 5, 155 S. W., 536; Harrelson v. State, 60 Tex. Cr. R., 534, syl. 5, 132 S. W., 783; State v. Weinberg, 245 Mo., 564, 150 S. W., 1069; State v. N. Gaston, 96 Iowa, 505, 65 N. W., 415; Holmes v. State, 131 Ga., 806, 63 S. E., 347.
Third. As to the misconduct of the prosecuting attorney, the record discloses that the defendant had failed to support his, wife, and, the testimony as to the robbery on the street car having been admitted, it was within the scope of argument for the prosecutor to give his views thereon, and, the defendant having taken the stand in his own behalf, it was proper for the prosecutor to comment upon the kind of man he was, as bearing upon the question of the weight to be given to his testimony.
As is well said in the case of Jones v. State, 11 Ohio App., 441, 446:
“While the prosecuting attorney is a semi-judicial officer, presumed to be interested alike in the punishment of the guilty and the protection of the innocent, we do not understand it therefore follows that he is deprived of the privilege of properly expressing in argument his honest convictions upon the effect of evidence laid before a jury. He is not required to remain sphinxlike and witness the cause he officially represents lost through his failure to assert the rights of the state; but he owes it to 'the state to be vigilant to the end that in the orderly administration *325 of justice the interests of the state may not be neglected, but properly looked after. He may not always find the- jury agreeing with him, but the same instrument and the same law which afforded the humane and charitable presumption of innocence of one charged with the crime are the same instrument and the same law which afford to counsel generally the right to be heard before the courts, and especially is this the privilege of the prosecuting attorney who is specially charged by the law and by his oath to faithfully represent the interests and welfare of the public. ’ ’
We are unable to find that the record discloses any misconduct on the-part of the prosecuting attorney sufficient to justify us in disturbing this verdict.
Fourth. The next assignment of error is as to the misconduct of the jury, but this ground is not sufficiently supported in the record, and we must therefore deny reversal for that reason.
Fifth. The fifth, and last, contention of the plaintiff in error is that the court erred in its charge. In this regard it is urged that, while the court instructed the jury correctly as to murder in the first degree, under Section 12402, General Code, it failed to give sufficient instructions as to Section 12402-1, General Code, as charged in the second count of the indictment, to-wit, the killing of a policeman in the discharge of his duty. A careful examination of the charge discloses that the court correctly defined the terms used in the indictment, which go to make up murder in the first degree, and, having correctly defined them as to the first count of the indictment, it was not necessary to repeat the same as to the second count of the indictment, and there is nothing so involved about the plain and ordinary English used *326 in the second count of the indictment that the jury-might not readily understand, although it might not have been out of place to have instructed more fully upon the second count. Both counts were for murder in the first degree, and the elements of the offense, that the accused did the shooting purposely, willfully and maliciously, were fully explained.
No request was made of the court for additional instruction, nor was anything further than a general exception taken to the charge. The attention of the trial judge was not called to any failure to give more detailed instructions as to the second count. The record not affirmatively showing any request for further or additional instructions, the omission of the court to charge cannot be raised on a general exception.
In the case of State v. Schiller, 70 Ohio St., 1, at page 8, 70 N. E., 505, at page 507, this court held:
“No request was made by defendant, or his counsel, for any further or additional charge on this subject, and no objection was made or exception taken to this particular portion of the charge as given. The only exception taken or noted by counsel for defendant, being a general exception to the charge as a whole. It is a familiar and very general rule of practice, applicable alike to criminal and civil causes, that mere partial non-direction, or incomplete instruction, as to a particular matter or issue, does not of itself constitute reversible error, in the absence of a request for more specific and comprehensive instructions upon the particular point or issue involved.”
To the same effect are Columbus Ry. Co. v. Ritter, 67 Ohio St., 53, 65 N. E., 613, and State v. McCoy, 88 Ohio St., 447, 103 N. E., 136.
*327 The jury having found the defendant guilty upon both counts of the indictment, and there being no complaint made as. to the instructions of the court as to the first count in the indictment, we cannot disturb the verdict. If the verdict would be justified upon the count concerning which no complaint is made, and in regard to which there is no error, and there is sufficient testimony to support it, clearly the verdict should not be disturbed. This is a well-established rule of law, and is. sustained by the following authorities: Forsythe v. State, 6 Ohio, 20; Stoughton and Hudson v. State, 2 Ohio St., 563; Robbins v. State, 8 Ohio St., 131; John Boose v. State, 10 Ohio St., 575; Mose v. State, 35 Ala., 421, 427.
In conclusion, recognizing the gravity of the case not only to the accused, but to the people of the state of Ohio, and having carefully examined the record and the briefs of counsel, and assisted by the able presentation of counsel in oral argument, both for the state and the defense, who have performed an unpleasant duty, as counsel appointed by the court, in a highly commendable manner, we are constrained to the conclusion that no prejudicial error intervenes in this record, which justifies disturbing the verdict.
Entertaining these views, the judgment of the Court of Appeals is therefore affirmed.

Judgment affirmed.

Marshall, C. J., Wanamaker, Bobinson, Jones and Matthias, JJ., concur.
Allen, J., took no part in the consideration or decision of the case.